ACCEPTED
15-25-00076-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/11/2025 1:48 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00076-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/11/2025 1:48:23 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
## FOR THE FIFTEENTH DISTRICT OF TEXAS
### AUSTIN, TEXAS

**IN THE MATTER OF THE MARRIAGE OF TERRY BRENT WILLIAMS AND TRACY LEANN WILLIAMS AND IN THE INTEREST OF P.R.W., A CHILD**,

On Appeal from the 369th District Court
Leon County, Texas, No. 22-0059CV
The Honorable Michael Davis, Presiding

## APPELLANT'S BRIEF

Clouthier Law, PLLC
Susan J. Clouthier
Tex. Bar No. 24062673
Elizabeth M. Steiner
Tex. Bar No. 24057028
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 7380
Ph: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorneys for Appellant**
**Terry Brent Williams**

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Appellant:                          Terry Brent Williams

Appellee:                           Tracy Leeann Williams

Counsel for Appellant:              Susan J. Clouthier
                                    Elizabeth Steiner
                                    Clouthier Law, PLLC
                                    9950 Woodloch Forest Drive
                                    Suite 1300
                                    The Woodlands, Texas 77380

Trial Counsel for Appellant:        Mr. Jeffrey L. Coe
                                    603 E. Lacy Street
                                    Palestine, Texas 75801

Counsel for Appellee:               Mr. John R. Bankhead
                                    P.O.Box 1839
                                    Madisonville, Texas 77864

Trial Court Judge:                  The Honorable Michael Davis
                                    369th District Court
                                    Leon County, Texas
                                    500 N. Church Street, No. 18
                                    Palestine, TX 75801

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................ii

Index of Authorities............................................................................. v

Statement of the Case ........................................................................ 1

Statement Regarding Oral Argument ................................................... 2

Issues Presented.................................................................................. 3

Statement of Facts ............................................................................. 4

Summary of the Argument .................................................................. 10

Standard of Review ........................................................................... 14

Argument and Authorities .................................................................. 16

    I.   The trial court's child support order requiring Terry Williams to pay more per month in child support than his entire net pay was an abuse of discretion. ................................................................ 16

    II.  In the alternative, requiring Terry to pay an amount of child support exceeding both the statutory guidelines and his actual pay without any specific factual findings (or evidence) to support that an excess was needed to meet the child's needs (or for any other statutorily enumerated purpose) was an abuse of discretion. ............ 22

    III. Terry did not agree that the value of his separate property was $20,000 as the court's *Findings of Fact* indicate. Further, the court committed reversible error by awarding the majority of the proceeds from the sale of his separate property to the community. ................... 25

    IV.   In the alternative to III, the trial court abused its discretion by valuing Terry's 10.8 acres of separate property in a 44 acres parcel of land (that netted $385,935 at sale) at only $20,000 because this valuation was arbitrary, unreasonable, and unsupported by the record and evidence. The trial court made this ruling without reference to any guidelines or principles. Evidence in the record shows this 10.8

acre parcel of land was purchased by Terry in 2009 for $127,645. Further, it constituted approximately ¼ of a larger parcel of land that netted $385,9835 at sale. ...............................................................34

V. The trial court committed reversible error by awarding Appellee 100 percent of the value of certain personal property rather than making a just and right division of that property. ...............................41

VI. The court committed reversible error by divesting Terry of the value of his separate property welding equipment. ...........................48

VII. The trial court committed reversible error by requiring Terry to pay for Appellee's attorney's fees. .....................................................49

Conclusion and Prayer .........................................................................52

Certificate of Service ............................................................................55

Certificate of Compliance......................................................................55

Appendix................................................................................................56

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*Banker v. Banker,*
517 S.W.3d 863 (Tex. App.—Corpus Christi-Edinburg 2017, pet.
denied)......................................................................................................38

*Barnett v. Barnett,*
67 S.W.3d 107 (Tex. 2001) ...................................................................27

*Bush v. Yarborough Oil &* Gas,
705 S.W.3d 451 (Tex. App—El Paso 2024, pet. denied).......................46

*City of Harlingen v. Estate of Sharboneau,*
48 S.W.3d 177 (Tex. 2001) ...................................................................38

*E.g., Cade v. Dudney,*
279 S.W.2d 370 (Tex. App.—Eastland 1964, writ ref'd n.r.e.)............28

*Eggemeyer v. Eggemeyer,*
554 S.W.2d 137 (Tex. 1997) ..........................................................Passim

*Finch v. Finch,*
825 S.W.2d 218 (Tex. App.—Houston [1st Dist.] 1992, no writ) .........16

*Ganesan v. Vallabhaneni,*
96 S.W.3d 345 (Tex. App.—Austin 2002, pet denied) .........................28

*Gerami v. Gerami,*
666 S.W. 2d 241 (Tex. App.—Houston [14th Dist.] 1984, no
writ).............................................................................. 35, 36, 37, 40

*Gonzalez v. Gonzalez,*
704 S.W. 3d 54 (Tex. App.—Austin 2024, no pet.) ..............................16

*Gupta v. Gupta,*
2010 WL 2540487 (Tex. App.—Austin June 24, 2010, no pet.) ...........16

*Iliff v. Iliff,*
  339 S.W.2d 74 (Tex. 2011) ............................................................ 14, 22

*In re Acceptance Ins. Co.,*
  33 S.W.3d 443 (Tex. App.—Fort Worth 2000, orig. proceeding).... 14, 52

*In re City of McAllen,*
  677 S.W.3d 746 (Tex. 2023) ................................................................52

*In re J.A.V.,*
  2022 WL 379316 (Tex. App.—San Antonio Feb. 9 2022, no pet.)........24

*In re M.A.M.,*
  346 S.W.3d 10 (Tex. App.—Dallas, pet denied) ...................................24

*In re Marriage of Grisham,*
  2010 WL 4570266 (Tex. App.—Waco Oct. 10 2010, pet. denied)...28, 33

*In re Marriage of Merrikj,*
  2015 WL 2438770 (Tex. App.—Houston [14th Dist.] May 19,
  2015, pet. denied) ...................................................................... 14, 22

*In re Marriage of Scott,*
  117 S.W.3d 580 (Tex. App.—Amarillo 2003, no pet.).........................39

*Jacobs v. Jacobs,*
  687 S.W.2d 731 (Tex. 1985) .................................................... 34, 48, 53

*Kelly v. Kelly,*
  634 S.W.2d 335 (Tex. App.—Houston [1st Dist.] 2021, no pet.)..Passim

*Landry v. Travelers Ins. Co.,*
  458 S.W.2d 649 (Tex. 1970) ........................................................ 15, 40

*Mandell v. Mandell,*
  310 S.W.3d 531 (Tex. App.—Fort Worth 2010, pet denied).................38

*Matter of Marriage of Edwards,*
  804 S.W.2d 653 (Tex. App.—Amarillo 1991, no writ) .........................24

*Matter of Marriage of Price,*
  2015 WL 6119457 (Tex. App.—Waco Oct. 15, 2015, no pet.)...............28

*McElwee v. McElwee,*
  911 S.W.2d 182 (Tex. App.—Houston [1st Dist.] 1995, writ
  denied) ...................................................................................Passim

*Mogford v. Mogford,*
  616 S.W.2d 936 (Tex. App.—San Antonio 1981, writ ref'd n.r.e.) .35, 36

*Murff v. Murff,*
  615 S.W.2d 696 (Tex. 1981) ...............................................................15

*Natural Gas Pipeline Co. of Am. v. Justiss,*
  397 S.W.3d 150 (Tex. 2012) ...............................................................38

*Phillips v. Phillips,*
  75 S.W.3d 564 (Tex. App.—Beaumont 2002, no pet.) ....................15, 39

*Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,*
  337 S.W.3d 846 (Tex. 2011) ...............................................................38

*Rivera v. Hernandez,*
  441 S.W.3d 413 (Tex. App—El Paso 2014, pet. denied)........... 12, 29, 41

*Rodriguez v. Rodriguez,*
  860 S.W.2d 414 (Tex. 1993) ...............................................................25

*Scott v. Younts,*
  926 S.W.2d 415 (Tex. App.—Corpus Christi 1996, writ denied) ...24, 25

*Shanks v. Treadway,*
  110 S.W.3d 444 (Tex. 2003) ...............................................................46

*Sharma v. Routh,*
  302 S.W.3d 355 (Tex. App.—Houston [14th Dist.] 2009, no pet.) Passim

*Smithson v. Cessna Aircraft Co.,*
  665 S.W.2d 439 (Tex. 1985) ..........................................................15, 40

*Texas Parks and Wildlife v. Davis,*
  988 S.W.2d 370 (Tex. App.—Austin 1999, no pet.) .............................52

*Turner v. Turner,*
  385 S.W.2d 230 (Tex. 1964) ...................................................................51

*Wright v. Wright,*
  280 S.W.3d 901 (Tex. App.—Eastland 2009, no pet.) .........................51

*Zagorski v. Zagorski,*
  116 S.W.3d 309 (Tex. App.—Houston [1st Dist.] 2003, pet denied) ....27

## Statutes

Tex. Civ. Prac. & Rem. Code § 154.002 ...........................................14, 52

Tex. Const. Art. XVI, § 15 ...............................................................29, 30

Tex. Fam. Code § 3.001 ............................................................................30

Tex. Fam. Code § 3.002 ............................................................................30

Tex. Fam. Code § 7.001 ................................................................ 14, 48, 53

Tex. Fam. Code § 154.123 ............................................... 11, 23, 24, 25

Tex. Fam. Code § 154.125 ............................................... 19, 20, 21, 23

Tex. Fam. Code § 154.130 ............................................................... 11, 23

## Rules

Tex. R. App. P. 9.4(e) ...............................................................................56

Tex. R. App. P. 9.4(i)(1) ...........................................................................56

Tex. R. App. P. 9.4(i)(2) ...........................................................................56

Tex. R. App. P. 38.1, 39.1 and 39.2 ........................................................2

Tex. R. App. P. 41.3 .................................................................................33

Tex. R. Evid. 701 .....................................................................................38

**Other Authorities**

Ewald Kubota, <u>Equipment for Sale - Ewald Kubota</u>.............................45

Kubota, USA, "Build my Kubota," <u>Kubota Tractor - Build My Kubota - M60 Series</u> ..................................................................................45

Smart Asset, LLC, "Paycheck calculator: Federal, State &amp; Local Taxes," https://smartasset.com/taxes/pay-checkcalculator (2025).......21

Texas Workforce Commission, "Apply for Unemployment Benefits," https://www.twc.texas.gov/services/apply-benefits ..............................20

## STATEMENT OF THE CASE

Nature of the case:      This case is an appeal of a Final Decree of Divorce. C.R. at 110-76.

Course of Proceedings:      On March 3, 2022, Terry Brent Williams filed an Original Petition for Divorce, C.R. at 5-15. Tracy Leeann Williams filed Respondent's Original Answer on April 18, 2022, C.R. at 16-18.

Disposition of the case:      After a status hearing on October 31, 2024, 2 R.R. at 1-11, another status hearing on December 6, 2024, 3 R.R. at 1-19, and a Final Hearing on February 25, 2025, the trial court rendered judgment, by its Final Decree of Divorce on March 18, 2025. C.R. at 110-76.

Court of Appeals
Jurisdiction:      The trial court entered its Final Decree of Divorce on March 18, 2025. C.R. at 110-76. The trial court rendered its Findings of Fact and Conclusions of Law on April 21, 2025. C.R. at 198-201. Terry Brent Williams filed a Notice of Appeal on April 15, 2025. C.R. at 190-91. Therefore, this case is properly before this Court of Appeals.

1

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure 38.1, 39.1 and 39.2, Appellant, Terry Brent Williams ("Terry"), respectfully requests oral argument before this Court of Appeals. Although Terry represents that the facts and legal arguments are thoroughly presented in this brief and in the record, he also believes the decision process of the Court of Appeals will be significantly aided by oral argument. This appeal concerns complex factual and legal issues regarding the proper calculation of child support, the proper division of an approximately $400,000 piece of mixed character property, and the appropriateness of a punitive award of both property and attorney's fees to Appellee. Thus, Terry and counsel believe that oral argument will aid this Court in its decision process by explaining certain facts and legal arguments. Accordingly, Terry requests oral argument.

## ISSUES PRESENTED

I. The trial court's child support order requiring Terry Williams to pay more per month in child support than his entire net pay was an abuse of discretion.

II. Requiring Terry to pay an amount of child support exceeding both the statutory guidelines and his actual pay without any specific factual findings (or evidence) to support that an excess was needed to meet the child's needs (or for any other statutorily enumerated purpose) was an abuse of discretion.

III. Terry did not agree that the value of his 10.8 acres of separate property was $20,000 as the court's *Findings of Fact* indicate. The court committed reversible error by awarding the majority of the proceeds from the sale of his separate property acreage to the community.

IV. In the alternative to Issue III, the trial court abused its discretion by valuing Terry's 10.8 acres separate property in a 44 acres parcel of land (that netted $385,935 at sale) at only $20,000 because this valuation was arbitrary, unreasonable, and unsupported by the record and evidence. The trial court made

this ruling without reference to any guidelines or principles. Evidence in the record shows this 10.8-acre parcel of land was purchased by Terry in 2009 for $127,645. Further, it constituted approximately ¼ of a larger parcel of land that netted $385,9835 at sale.

V. The trial court committed reversible error by awarding Appellee 100 percent of the value of certain personal property rather than making a just and right division of that property.

VI. The court committed reversible error by divesting Terry of the value of his separate property welding equipment.

VII. The trial court committed reversible error by requiring Terry to pay for Appellee's attorney's fees.

STATEMENT OF FACTS

Terry Brent Williams and Tracy Leeann Williams had a daughter, in 2010. The following year, on September 10, 2011, the couple got married. C.R. at 198. Terry filed for divorce on March 3, 2022. C.R. at 5-15.

## *The Buffalo Property*

In 2009, before the marriage, Terry purchased 10.8 acres in Buffalo,

Texas for about $127,645.00. 5 R.R. at pdf pp. 17-21. This is the first page of the Deed to that property showing that it was conveyed in 2009 to "TERRY BRENT WILLIAMS, A SINGLE MAN":

LCAC 08-214

Loan No: 02-20099433
Borrower: TERRY BRENT WILLIAMS

Data ID 131

WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Date: April 23, 2009

Grantor: DONALD W WOOD AND CYNTHIA WOOD

Grantee: TERRY BRENT WILLIAMS, A SINGLE MAN

Grantee's Mailing Address (including county):

648 S CENTER ST
BUFFALO, TEXAS 75831
LEON County

Consideration:

TEN AND NO 100 DOLLARS ($10.00) and other valuable consideration and note of even date executed by Grantee payable to the order of
WESTSTAR MORTGAGE CORPORATION ("Lender"),
in the amount of $ 127,645.00
the note being secured in whole or in part by vendor's lien and superior title retained in favor of Lender in this deed and also secured by a deed of trust of even date from Grantee to MICHAEL L RIDDLE, Trustee.

Property (including any improvements):

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

5 R.R. at pdf p. 17.

Here is the first part of the "legal description" that was attached to the above 2009 Warranty Deed showing the property description for the 10.8 acres that Terry purchased:

**STANGER SURVEYING FAIRFIELD LLC**

205 EAST COMMERCE STREET
FAIRFIELD, TX 75840

PH: 903-389-4403                                   FAX: 903-389-4390

**T.S. WALKER SURVEY, ABSTRACT NO. 965**
**D.A. LOWRANCE SURVEY, ABSTRACT NO. 1092**
**LEON COUNTY, TEXAS**

**METES AND BOUNDS DESCRIPTION FOR 10.80 ACRES OF LAND**

**Being 10.80 acres of land** situated in the T.S. Walker Survey, Abstract No. 965, and the D.A. Lowrance Survey, Abstract No. 1092, Leon County, Texas and being all of that certain called 1.126 acre tract of land and part of that 1.664 acre tract of land, both described in a deed from W.S. Coleman to Donald W. Wood et ux, dated December 27, 1993, and recorded in Volume 845, Page 78, being all of that certain called 4.202 acre tract described in a deed from James Albert Scott, et al., to Donald W. Wood, dated August 26, 1974, and recorded in Volume 398, Page 615, and being all of that certain called 4 acre tract of land described in a deed from James Allan Boykin et ux to Donald W. Wood et ux, dated May 26, 1994, and recorded in Page 879, Page 174, all of the Deed Records of Leon County, Texas, said 10.80 acre tract to be more particularly described by metes and bounds as follows:

5 R.R. at pdf p. 19.

After being married, the couple subsequently purchased additional acreage until the total acreage owned by them constituted about 44 acres. C.R. 19; 3 R.R. at 2-3. The couple agreed that this acreage would all be sold together—both Terry's 10.8 acres of separate property and the other approximately 32 acres of community property acreage. *See* 2 R.R. at 5; *see also* C.R. at 164-66. The sale of the 44 acres netted $385,935.33 after fees and taxes. C.R. at 164-66, 200. Yet, the trial court only awarded Terry $20,000 for his 10.8 acres of separate property. C.R. at 164, 200.

6

### *Child Support*

With respect to custody of their daughter, P.R.W., the court ordered that both parents should be joint managing conservators. C.R. 198. Appellee has the right to designate P.R.W.'s primary residence within Leon County or contiguous counties. C.R. 199. Conservatorship and access are governed by a standard possession order. C.R. 199.

The court ordered Terry to pay Appellee $1,758 in child support per month, $150.17 per month for P.R.W.'s medical insurance, $26.37 for P.R.W.'s vision/dental insurance, and 50 percent of all of P.R.W.'s non-reimbursed health care expenses. C.R. 141, 145, 199. The court based this on a finding that the monthly net resources of Terry Williams were $8,790.60. C.R. at 199.

A 2023 tax return—which is not in the record—ostensibly showed Terry making about $140,000 **gross** running a business wherein he laid concrete and did welding work. *See* 4 R.R. at 26. However, this $140,000 was before he paid business expenses including fuel, concrete supplies, taxes, and before Terry paid his employees. 4 R.R. at 26. Thus, his net income would have been lower. No testimony or evidence was in the record showing what his Terry's net resources were for 2023, 2022, or any

preceding years.

Regardless of what his net income was in 2023, that was no longer his income at the time of trial in February of 2025. 4 R.R. at 22-27. In about 2023 or 2024, Terry went to work at Harris Rebar as a "prelog fabricator" to have a more secure source of income. 4 R.R. at 22, 24. Harris Rebar is a company that does work for Nucor. 4 R.R. at 22. This job paid him $18.50 per hour, but he was not guaranteed a certain number of hours. 4 R.R. at 22. After eleven months at this job, Terry went to work for a company named "TIC" in Defore, TX because it paid more. 4 R.R. at 22-24. He made $30 per hour at this job operating a skid steer. 4 R.R. at 23-24. During the pendency of the litigation, Terry produced paycheck stubs to Appellee's counsel to show his income. 3 R.R. at 8.

Terry worked at "TIC" until he was laid off in early February 2025. *See* 4 R.R. at i, 24 (stating he was laid off three weeks before the February 25, 2025 hearing). Terry made a claim for unemployment and testified that he expected to receive $460 per week in unemployment. 4 R.R. at 25.

Terry testified that since his lay-off he has applied at multiple places trying to find work and has been doing odd jobs (such as cleaning a fence row for his uncle) to try to earn money. 4 R.R. at 25-26. However,

8

his only source of guaranteed income as of the trial date was the $460 per week income from unemployment. 4 R.R. at 25-28. Terry stated that he wants to financially provide for his daughter and that he would report any changes in income to the attorney general's office, or the clerk of the court, or anyone who needed to be made aware so that his child support would be adjusted when he found a job. 4 R.R. at 27-28.

### *Personal Property*

The court ordered the sale of multiple items of personal property that belonged primarily to Terry. These items included: a John Deere Skid Steer, a 32 ft Tiger flatbed trailer, a 20 ft lowboy, a black gooseneck trailer with sides, a 15 ft Batwing Shredder, a TRX yellow four-wheeler, a Kubota cab tractor, a Dodge 2500 single cab welding truck w/ welder, a 34-foot Keystone Bunkhouse Camper, a 2002 Dodge Ram 3500, a 1998 Dodge, a 2006 Silver Dodge Dually without a motor, a gas shop heater, a small pressure washer, a timeshare with Holiday Inn, a shop door, a Connex/shipping container, a lawnmower trailer, a gun safe, and a second scag mower. C.R. at 74-75. Terry turned over the majority of these items which netted the community (after paying the receiver ten percent to sell the items) over $45,000. C.R. 199. However, Terry put new tires

on one of the vehicles because one of the tires was defective, did not remove the shop's door, did not turn over the attachments to the tractor and skid steer as they were not in the order, and did not turn over his welding equipment that he owned prior to marriage. 4 R.R. at 38-39. The court awarded Appellee the full value of the missing property and ordered Terry to pay Appellee's attorney's fees. 4 R.R. at 44-45, C.R. at 199-200. These two awards totaled almost $21,000. *See* C.R. at 199-200.

The divorce was granted on March 18, 2025. C.R. at 110-76. Terry subsequently appealed on April 15, 2025. C.R. at 190-91.

## SUMMARY OF THE ARGUMENT

The trial court's child support order requiring Terry Williams to pay $1,934.54 per month (child support, medical, and dental/vision) was an abuse of discretion because Terry was unemployed and there was no evidence in the record to support its finding that he made a net of $8,790.60 per month.

Further, the court's child support order was in error because a deviation from the Texas Family Code ("TFC") child support guidelines require the court to make specific findings explaining the reasons for the deviation and including both the obligor's and obligee's net resources.

10

TEX. FAM. CODE §§ 154.130, 154.123 (stating reasons a court may deviate from the child support guidelines). Here, not only did the trial court fail to make these findings, but there was no evidence in the record that the child's needs were greater than 20 percent of Terry's current net monthly resources. Instead, the court ordered an amount of child support that was 108 percent of Terry's monthly net resources. This was an abuse of discretion.

Additionally, the trial court committed reversible error because it only awarded Terry $20,000 for 10.8 acres of land that was his separate property. The land had been purchased by Terry before the marriage in 2009 for $127,645. The court sold the property, only awarded Terry $20,000 for his interest, and granted the remainder of the proceeds from the sale of the land to the community. Where a trial court divests a party of his or her separate property, it is not necessary for that party to show harm because divestiture of separate property is reversible error as a matter of law. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1997); *Rivera v. Hernandez*, 441 S.W.3d 413, 424 (Tex. App—El Paso 2014, pet. denied). Thus, the trial court in this case committed reversible error by divesting Terry of his separate property.

In the alternative, the trial court abused its discretion by valuing Terry's separate property interest (in a 44-acre parcel of land that netted $385,935 at sale) was worth only $20,000 even though Terry's separate property constituted 10.8 acres of the 44-acre parcel and had originally been purchased for $127,645. The court's valuation was arbitrary, unreasonable, and not supported by the record or evidence. The trial court made this ruling without reference to any guidelines or principles. It is not necessary for Terry to show harm because this valuation caused a divestiture of separate property. *Eggemeyer,* S.W.2d at 140; *Rivera* 441 S.W.3d at 424. Thus, a finding that the trial court abused its discretion in valuing Terry's separate property at $20,000 would be sufficient to warrant reversal and remand. *See id.*

The trial court also committed error by awarding Appellee 100 percent of the value of certain personal property rather than making a just and right division of that property. The trial court did this to punish Terry because it believed he did not turn over certain items. The reason Terry did not turn over those items is that they were not included in the court's *Order for Sale of Personal Property of the Parties* ("Order"). Thus, the court erred by giving the value of these items to Appellee. The value

of these items should have been divided equitably between the parties rather than given solely to Appellee. This error was more than *de minimus* because it constituted more than three percent of the community estate, and, therefore, remand is warranted. *See McElwee v. McElwee*, 911 S.W.2d 182, 188-90 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (an error that constituted three percent was more than *de minimis* and warranted remand).

The court also committed error by awarding Appellee the full value of Terry's separate property welding equipment that he owned before the marriage. This divested Terry of his separate property so remand is warranted.

Finally, the court committed error by requiring Terry to pay for Appellee's attorney's fees. The court did this to punish Terry for not settling the case. Punishing a party because he would not settle a case goes against the voluntary nature of alternative dispute resolution/mediation. *See In re Acceptance Ins. Co.*, 33 S.W.3d 443, 452-54 (Tex. App.—Fort Worth 2000, orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE § 154.002. Division in divorce proceedings must be based on what is "just and right" rather than arbitrary and pecuniary.

*See* TEX. FAM. CODE § 7.001. Harm occurred because the trial court's punitive awards to Appellee of what should have otherwise been community property was more than "*de minimus.*" *See McElwee*, 911 S.W.2d at 188-90.

## STANDARD OF REVIEW

A trial court's child support order will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Iliff v. Iliff*, 339 S.W.2d 74, 78 (Tex. 2011). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles, or by failing to analyze or apply the law correctly. *Id*. The trial court does not abuse its discretion if the record contains some evidence of substantive and probative character to support its decision. *In re Marriage of Merrikj*, No. 14-14-00024-CV, 2015 WL 2438770, at *2 (Tex. App.—Houston [14th Dist.] May 19, 2015, pet. denied).

When a trial court mischaracterizes separate property as community property and awards it to the other spouse, this constitutes an abuse of discretion and is reversible error. *Eggemeyer*, 554 S.W.2d at 140. In such an instance, it is not necessary to show harm or demonstrate that the overall property division constitutes an abuse of discretion. *Id*.

14

Such errors require the appellate court to remand the case for a proper division of property. *Kelly v. Kelly*, 634 S.W.2d 335, 346-47 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

An appellate court reviews a trial court's valuation of property in a divorce under an abuse of discretion standard. *See Phillips v. Phillips*, 75 S.W.3d 564, 574 (Tex. App.—Beaumont 2002, no pet.). The test for abuse of discretion is "whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, S.W.2d 238, 241-42 (Tex. 1985). Another way of stating the test is to ask whether the act was arbitrary or unreasonable. *Id.* at 242; *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex. 1985); *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex. 1970).

The appellate court reviews the trial court's division of community property under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). Further, a party who complains of the way the trial court divided the community property must show from the evidence that the error made the *overall division* so unjust and unfair as to constitute an abuse of discretion. *Gonzalez v. Gonzalez*, 704 S.W. 3d 54, 82 (Tex. App.—Austin 2024, no pet.); *Gupta v. Gupta*, No. 03-09-

15

00018-CV, 2010 WL 2540487, at \*6 (Tex. App.—Austin June 24, 2010, no pet.) (mem. op.); *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ).

ARGUMENT AND AUTHORITIES

**I.    The trial court's child support order requiring Terry Williams to pay more per month in child support than his entire net pay was an abuse of discretion.**

In the trial court's *Finding's of Fact and Conclusions of Law*, the trial court held:

> 10. The monthly net resources of Terry Brent Williams are $8,790.60.
>
> 11. Application of the Child Support Guidelines of the Texas Family Code of 20 percent supports the Court's award of child support in the amount of $1,758.00 per month beginning October 1, 2024.
>
> 12. Health insurance is available for [P.R.W.] through the employment of Tracy Leeann Williams.
>
> 13. It is in the best interest of [P.R.W.] that Tracy Leeann Williams provide health insurance through her employment and that Terry Brent Williams pay medical support in the amount of $150.17 per month beginning October 1, 2024.

C.R. at 199.

Additionally, the trial court also ordered Terry to pay $26.37 for P.R.W.'s vision and dental insurance as well as 50 percent of all of

P.R.W.'s non-reimbursed health care expenses. C.R. 141, 145.

There was no evidence in the record to support Finding of Fact No. 10 that "[t]he monthly net resources of Terry Brent Williams are $8,790.60." C.R. at 199. The trial court set child support based on the assumption that Terry's gross income was $140,000 with the $8,790.60 figure being the monthly net proceeds after applicable taxes. 4 R.R. at 44, C.R. at 199. This was error as there was no evidence in the record to support that Terry's current income or resources were this much.

The only evidence in the record supports that Terry's income was substantially lower. Appellant supplied his paycheck stubs prior to his lay off to opposing counsel. 3 R.R. at 8, 10. He also testified that he had been laid off and would be receiving $460 per week from unemployment. 4 R.R. at 25. As of the time of trial, he had only been unemployed for three weeks so unemployment benefits had not yet started. 4 R.R. at 25. This testimony was as follows:

> Q. So, as far as your actual income as of today, and as of the last three weeks, and you haven't even received a check yet, but you anticipate receiving $460 per week?
>
> A. Yes, sir.
>
> Q. Okay. If the Judge were to order you to pay child support at $140,000 a year, are you making $140,000 a year?

A. No, sir.

Q. Would you be able to -- as you sit here today, would you even be able to think about paying child support at $140,000 per year?

A. No, sir.

Q. Is that going to put you in arrears immediately, based on your income coming in right now?

A. Well, on my income coming in right now, yes, sir, it would.

Q. Because you don't -- you don't have anything right now.

A. Correct.

Q. And you haven't had anything for the last -- When did you get your last check from your employer?

A. Like I said, about three weeks ago.

Q. Okay. Do you have any other sources of income, or resources available to you?

A. No, sir. I just go -- right now, just going to work for whoever needs some help.

Q. And you're willing to do whatever it takes to come back to the Court, to report to the Court, to give whoever needs access to determine when you do get employed, you're going to report that to the Attorney General's office, to the clerk's office, to whoever needs to know, so that can be re-evaluated; is that correct?

A. Yes, sir.

18

Q. You didn't ask to be laid off work, did you?

A. No, sir.

Q. You didn't do this as an intentional act to cause your child support to be less than what it would have been otherwise?

A. No, sir.

Q. You want to take care of your daughter?

A. Correct. Yes, sir.

4 R.R. at 26-28.

Pursuant to the Family Code Section 154.125(b), Appellee would be required to pay 20 percent of his net resources as child support since he is responsible for only one child. Using the paycheck calculator at smart asset.com to estimate income after federal taxes and withholdings, based on an income of $460 per week, this would leave Terry a "net" pay of $407 per week, $1763.67 per month, or $21,164 per year. Thus, his current total child support liability of $1934.54 (child support plus insurance, dental, and vision) is currently more than his net monthly resources of $1,763.67 by $170.87. Pursuant to the Family Code Section 154.125(b), he should be paying $352.73 per month based on his current net resources.

Even if one were to assume arguendo that the court felt as though

Terry's unemployment was purposeful—which there is no evidence in the record to support this finding and, furthermore, Terry would not be receiving unemployment benefits if he had quit or been fired for cause[1]—using the amounts Terry made in his last two jobs would not equate to anywhere near the amount the court ordered Terry to pay.

In the job that Terry had before he was laid off, he made $30 per hour. 4 R.R. at 23-24. His net take home pay working full-time would be about $1,0001 per week or $4,337.67 per month.[2] Pursuant to TFC Section 154.125, Terry's child support would be $867.53 per month assuming an income of $30 per hour working full-time.

At the job Terry had before his last job, he made $18.50 per hour. 4 R.R. at 23. After taxes, this would equate to a take home pay of $633 per week, $2,743 per month, or $32,916 per year.[3] Thus, his child support using this amount would be $548.60. TFC § 154.125.

---

[1] The Texas Workforce Commission website states: "Unemployment Benefits is an employer-paid program that provides temporary, partial income replacement to eligible workers who, **through no fault of their own**: Lost their job or are working reduced hours." Texas Workforce Commission, "Apply for Unemployment Benefits," https://www.twc.texas.gov/services/apply-benefits, retrieved Sept. 4, 2025 (emphasis added).

[2] Smart Asset, LLC, "Paycheck calculator: Federal, State & Local Taxes," https://smartasset.com/taxes/pay-checkcalculator (2025), last retrieved September 4, 2025.

[3] *See id*.

Terry's testimony is the only evidence in the record that establishes his income. The court instructed Appellee's attorney to subpoena Appellee and Appellant's tax records either from the couple's CPA or the IRS:

> THE COURT: You subpoena the CPA, contact the I-R -- whatever you need to do to get –
>
> MR. BANKHEAD: I will.

3 R.R. 11.

Mr. Bankhead was Appellee's attorney, not Appellant's attorney. 4 R.R. at ii. There are no tax returns in the record.

On appeal, the complaining party must show that the trial court's child support order was an abuse of discretion. *Iliff*, 339 S.W.2d at 78. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles, or by failing to analyze or apply the law correctly. *Id*. Here, the trial court did exactly that as it disregarded the guidelines laid out in the Family Code and the evidence. The only evidence in the record supported that Terry was unemployed and only receiving $460 per week from unemployment. 4 R.R. at 26-28.

The trial court does not abuse its discretion if the record contains some evidence of substantive and probative character to support its

decision. *In re Marriage of Merrikj*, 2015 WL 2438770 at \*2. Here, there is no evidence in the record to support the trial court's order that child support should be based on an income of $140,000. Thus, the trial court abused its discretion, and its ruling should be reversed.

**II.    In the alternative, requiring Terry to pay an amount of child support exceeding both the statutory guidelines and his actual pay without any specific factual findings (or evidence) to support that an excess was needed to meet the child's needs (or for any other statutorily enumerated purpose) was an abuse of discretion.**

If a court is going to deviate from the child support guidelines in the Texas Family Code Sec. 154.125, the court must provide specific findings explaining the reasons for the deviation, including the obligor's and obligee's net resources and the specific reasons for the variance. TEX. FAM. CODE § 154.130; *see also* TEX. FAM. CODE § 154.123 (specifically enumerated reasons the court may deviate from the child support guidelines laid out in Texas Family Code § 154.125). The trial court in this case did not do that.

Instead, the trial court ignored the guidelines and ordered Terry to pay an amount of child support that was 108 percent of his monthly net income. *Cf* C.R. at 199 *with* 4 R.R. at 23-28. The record suggests that the trial court did this to punish Terry for what the court perceived as his

22

wrongdoing in his failing to turn over certain personal property, even though said property was not named in an order. Specifically, the trial court stated:

> In addition to the conduct, and misleading the Court, not following directions, making this case a lot harder than it had to be, I'm assessing the attorney's fees -- his child support is going to be set in the amount of $140,000.00 self-employed rate…Mr. Williams, you made this a lot harder, and I told you, I've been warning you from day one, when you think you're smarter than everybody, that this is what happens. I could have done you a lot worse than this, just off of what I heard on the witness stand. Do you understand me?

4 R.R. at 44-45.

Deviations from the child support guidelines must be tied to the child's needs and not to extraneous factors such as punishing a parent. *See Scott v. Younts*, 926 S.W.2d 415, 420 (Tex. App.—Corpus Christi 1996, writ denied) (holding that the trial court improperly considered factors outside of those set forth in the predecessor to the Family Code Sec. 154.123 for an obligor earning over the presumptive obligation); *see also Matter of Marriage of Edwards*, 804 S.W.2d 653, 656-57 (Tex. App.—Amarillo 1991, no writ). "To impose child support beyond the guidelines, the record must contain evidence of the 'proven needs' of the child." *In re M.A.M.*, 346 S.W.3d 10, 17 (Tex. App.—Dallas, pet denied); *see also In re*

*J.A.V.*, No. 03-21-00084-CV, 2022 WL 379316, at \*3 (Tex. App.—San Antonio Feb. 9 2022, no pet.) (mem. op.) (same). "By law, an award in excess of the presumptive award must be based on the unmet needs of the child..." *Scott*, 926 S.W.2d at 420 *citing Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 (Tex. 1993).

Texas Family Code Sec. 154.123 also lays out specific reasons why a court may deviate from the recommended guidelines. None of these enumerated reasons are punitive in nature but instead focus on the best interest and needs of the child. *See* TEX. FAM. CODE § 154.123.

Here, requiring Terry to pay an amount of child support exceeding both the statutory guidelines *and his net pay* without any specific factual findings to support that an excess was needed for the child or for any other reason enumerated in Texas Family Code Sec. 154.123 was an abuse of discretion. *See* C.R. 198-201. To impose child support beyond the guidelines, the record must contain evidence of the child's "proven needs." *Rodriguez*, 860 S.W.2d at 417 (noting that child-support award exceeding statutory guidelines must be based on child's unmet needs). Here, there was no evidence introduced at trial that indicated the child's needs amounted to an amount greater than 20 percent of Terry's income.

Further, there was no evidence introduced showing that a deviation was justified for any of the other Section 154.123 reasons. TEX. FAM. CODE § 154.123. Thus, the court abused its discretion.

**III. Terry did not agree that the value of his separate property was $20,000 as the court's *Findings of Fact* indicate. Further, the court committed reversible error by awarding the majority of the proceeds from the sale of his separate property to the community.**

In its *Findings of Fact and Conclusions of Law*, the trial court stated:

> 21. The real property sold included a portion owned as Terry Brent Williams' separate property. Terry Brent Williams agreed the value of the separate property was $20,000.00.

C.R. at 200.

Terry did not agree that his separate property was worth $20,000. Instead, Terry testified:

> Q. Okay. And the -- Do you understand the Judge -- although it's not $60,000, the Judge has found $20,000 as a separate property offset that you're entitled to? Do you understand that?
>
> A. Yes, sir.
>
> Q. And we won't go into all of the details about all of that, but you do understand that that's the Judge's finding on it?
>
> A. Yes, sir.

4 R.R. at 30-31.

Asking a person if he understands that the Judge has determined the value of his separate property is $20,000 is not him agreeing that the value of the property is $20,000. Appellant's testimony was that he understood what the court had ordered, not that he agreed with it. 4 R.R. at 30-31. Appellant's counsel has not been able to locate *anywhere* in the record where Terry agreed that his 10.8 acres of separate property was worth only $20,000. Instead, the record indicates that the property would be worth substantially more as Terry purchased those 10.8 acres on April 23, 2009 (before his 2011 marriage[4]) for **$127,645**. 5 R.R. at pdf p. 17; *see also* 5 R.R. at pdf pp. 18-21 (rest of the Deed and survey).

A court determines whether property is separate or community by its character at the time of inception. *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). "Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested." *Zagorski v. Zagorski,* 116 S.W.3d 309, 316 (Tex. App.—Houston [1st Dist.] 2003, pet denied). Once determined, the character of the property is not altered by the sale, exchange or substitution of the property. *In re Marriage of*

---

[4] The couple was married September 10, 2011. C.R. 198.

26

*Grisham*, No. 10-09-00429-CV, 2010 WL 4570266, at *2 (Tex. App.—Waco Oct. 10 2010, pet. denied) (mem. op.). Separate property remains separate property although it may undergo any number of mutations and changes in form. *Id*.

Further, Texas courts have long held that land acquired by a spouse before marriage is separate property. *E.g.*, *Cade v. Dudney*, 279 S.W.2d 370, 373 (Tex. App.—Eastland 1964, writ ref'd n.r.e.). A spouse can show the separate property origin of a property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Matter of Marriage of Price*, No. 10-14-00260-CV, 2015 WL 6119457, at *7 (Tex. App.—Waco Oct. 15, 2015, no pet.) (mem. op.) (*citing Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet denied)).

Here, Terry showed that he was deeded title to the 10.8 acres in 2009 as a single man. 5 R.R. at pdf pp. 17-21. This was before the couple was married in 2011. C.R. at 198.

Further, the Texas Supreme Court has recognized the importance of one's right to their own property as "fundamental, natural, inherent, [and] inalienable." *Eggemeyer*, 554 S.W.2d at 140. This right is so

27

fundamental that it is recognized in the Texas Constitution. TEX. CONST. ART. XVI, § 15. A trial court may not divest a party of his or her separate property because the nature of separate property is determined by the Constitution, rather than by what is "just and right." *Eggemeyer,* 554 S.W.2d at 140, 142.

Here the court ordered the sale of Terry's separate property piece of land, then decided (with no evidence to back up its findings) that Terry should only receive $20,000 of the proceeds from that sale, and then awarded the rest of the proceeds from the sale to the community. *See* C.R. 200. (Terry's separate property land was sold together with other land owned by the community in one transaction. *See* C.R. 164-66.)

Additionally, an individual's right to their own property is so important that where a trial court divests a party of his or her separate property, it is not necessary for that party to show harm because divestiture of separate property is reversible error as a matter of law. *Eggemeyer,* 554 S.W.2d at 140, 142.; *Rivera,* 441 S.W.3d at 424.

Further, "[i]f the trial court mischaracterizes a spouse's separate property as community property and awards ***some*** of the property to the other spouse, then the trial court abuses its discretion and reversibly

28

errs." *Kelly*, 634 S.W.3d at 348 (emphasis added); *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (emphasis added). That is what has occurred here—the trial court mischaracterized Terry's interest in the 44 acres (that netted over $385,000 after fees at sale) as being only $20,000 even though Terry produced documents to the court showing that he owned 10.8 of the 44 acres as his separate property and had purchased that land for over $127,645 before the marriage. 5 R.R. at pdf pp. 17-21, C.R. 200. The court's determination that $20,000 was the extent of Terry's separate property interest in the 44-acres suggests that Terry had only owned about 5 percent of the 44 acres as his separate property. *See* C.R. 200. However, Terry owned 25 percent (i.e., 10.8 acres) of the 44-acre parcel of land as his separate property. 5 R.R. at pdf pp. 17-21. Improperly divesting a party of their interest in separate property is reversible error as a matter of law, in a divorce proceeding, without the need to conduct a harm analysis. TEX. CONST. ART. 16 § 15; TEX. FAMILY CODE §§ 3.001, 3.002. It is unconstitutional for a trial court to divest a party of their separate property by awarding ***any*** portion of it to the other party in a divorce proceeding. *Eggemeyer*, 554 S.W.2d at 140-41. Further, unlike the

29

situation in which a trial court has mischaracterized community property in a divorce proceeding, improperly divesting a party of their interest in separate property is reversible error as a matter of law without the need to conduct a harm analysis. *Id.*

*Eggemeyer* is both binding authority and factually similar to this case. *Id.* In *Eggemeyer*, the husband owned as his separate property an undivided one-third interest in a farm. *Id.* at 138. The trial court divested the husband of that interest and transferred his title to his wife. *Id.* This was reversible error because the nature of separate property of property is fixed by the Texas Constitution, and not by what is "just and right." *Id.* at 139. Furthermore, the court said that culpability or bad acts may be a basis for the dissolution of marriage, but they are "no basis for a redefinition of property at variance with the Texas Constitution." *Id.* Additionally, the protection of one's right to own property is "one of the most important purposes of government." *Id.* at 140. Even child support may not cause the divestiture of title to separate property. *Id.* at 142.

A similar situation occurred in *Kelly*. *Kelly*, 634 S.W.3d 335, 349-52 (Tex. App.—Houston [1st Dist.] 2021, no pet.). In that case, the husband argued that a portion of his 401(k) was separate property as he had made

contributions to the account for fifteen years prior to the marriage. *Id.* The trial court had wrongly divided the entire 401(k) up as though it was community property. *Id.* at 349-52, 362-63. Finding that part of the 401(k) was separate property, the Court of Appeals reversed and remanded the entire case back to the trial court for a new property division consistent with its findings regarding the husband's separate property. *Id.* at 352, 370.

Another factually similar case is *Sharma. Sharma*, 302 S.W.3d at 357. In that case, the husband claimed the trial court reversibly erred by characterizing income distributions he received from two testamentary trusts as community property and awarding half of those distributions to his wife, rather than awarding all of the distributions to him as his separate property. *Id.* The appellate court agreed and held that "the trial court reversibly erred in characterizing the Family Trust Income as community property rather than [the husband's] separate property and by awarding any part of this property to [the wife]… based on the trial court's reversible error in mischaracterizing the Marital Trust Income and the Family Trust Income, we sever the remainder of the judgment and reverse and remand for further proceedings in conformity with this

opinion." *Id.* at 368.

In another case from the jurisdiction in which this case originated,[5] the Waco Court of Appeals found that a trial court did not abuse its discretion in finding that two companies owned and operated by the husband prior to the marriage were his separate property even though he changed the form in which those companies existed during the marriage. *In re Marriage of Grisham,* 2010 WL 4570266 at *1-*2. Specifically, the husband formed a third company during the marriage into which he transferred the stock and assets of the original companies without receiving monetary compensation in return and was able to trace those assets in the new company back to his original separate property. *Id.*

Similarly, in *Jacobs v. Jacobs*, the Texas Supreme Court considered a situation where an appellate court had reversed part of a trial court's division of property because the trial court had, *inter alia*, "characterize[ed] as wholly community property certain properties in which husband had a separate property interest." *Jacobs v. Jacobs*, 687

---

[5] This case was transferred from the Tenth Court of Appeals in Waco, so that jurisdiction's law is the law that should be applied. TEX. R. APP. P. 41.3

S.W.2d 731, 732 (Tex. 1985). "The court of appeals, after finding that the trial court had erred in determining what was properly a part of the community estate, reversed and rendered judgment as to part of the property division; reversed and remanded as to another part; and affirmed the trial court's judgment as to the remainder." *Id.* at 731. The Texas Supreme Court stated:

> Whether the trial court abuses its discretion in dividing the property, as in *McKnight,* or commits reversible error in defining what property is properly a part of the community estate and therefore subject to division, as in the present case, the principle to be applied is the same. Once reversible error affecting the "just and right" division of the community estate is found, the court of appeals must remand the entire community estate for a new division.

*Id.* at 733.

Like *Eggemeyer*, *Kelly*, *Grisham*, *Sharma*, and *Jacobs*, the trial court in this case committed reversible error by divesting Terry of some his separate property acreage by wrongly classifying some of it as community property and then awarding it to the other party in the divorce. 5 R.R. at pdf pp. 17-21; C.R. at 200. Thus, the case should be remanded to the trial court for a just and right division of the remainder of the community estate with Terry's separate property interest removed before the community portion is divided.

IV. **In the alternative to III, the trial court abused its discretion by valuing Terry's 10.8 acres of separate property in a 44 acres parcel of land (that netted $385,935 at sale) at only $20,000 because this valuation was arbitrary, unreasonable, and unsupported by the record and evidence. The trial court made this ruling without reference to any guidelines or principles. Evidence in the record shows this 10.8 acre parcel of land was purchased by Terry in 2009 for $127,645. Further, it constituted approximately ¼ of a larger parcel of land that netted $385,9835 at sale.**

In the alternative, Terry argues that the trial court committed reversible error by misvaluing his separate property interest in land that was sold for a net of $385,935.33 by only awarding him $20,000 for that separate property interest. C.R. 164. (Both the community and Terry individually had interests in parcels of land that were sold together in one transaction. C.R. 164-66.)

Terry acknowledges that a court can order the sale of property when it is of a mixed character (i.e., when property consists of both separate property and community property) and the sale of the property is necessary to divide the community. *Mogford v. Mogford*, 616 S.W.2d 936, 945 (Tex. App.—San Antonio 1981, writ ref'd n.r.e.); *Gerami v. Gerami*, 666 S.W. 2d 241, 242 (Tex. App.—Houston [14th Dist.] 1984, no writ). However, for such a sale to not be considered a divestment of title, **all of the proceeds** that represent the spouse's separate property

34

**interest must be confirmed to that spouse**. *Mogford*, 616 S.W.2d at 945 (emphasis added). That did not occur here because the trial court awarded the community approximately 85 percent of the value of Terry's separate property acreage. *Cf* 5 R.R. at 17 *with* C.R. at 200 (showing Terry paid $127,645 for the property in 2009 and the court valued the property at only $20,000).

In *Gerami*, the appellant had owned a home prior to marriage that was his separate property. *Gerami*, 666 S.W. 2d at 241-42. The trial court ordered that this home be sold and then gave the proceeds of one-third of the value to the appellee and two-thirds to the appellant. *Id*. The appellant contended that this was error as it was his separate property and should not have been sold and, even though it was, he should have been entitled to the proceeds. *Id*. The Court of Appeals agreed, reversed the decision, and remanded the case to the trial court for a division of property consistent with the finding that the house was appellant's separate property. *Id*.

The present case is similar to *Gerami* because the trial court here ordered the sale of Appellant's 10.8 acres of separate property and, after Appellant's 10.8 acres were sold (along with 33 acres of community

property), he was only given about fifteen percent of its value. The rest of the proceeds were awarded to the "community" and then divided 50/50 between Appellee and Appellant. Thus, Appellee here received approximately $53,800 or 42 percent of the value of Appellant's separate property. This is more than the one-third that was reversible error in *Gerami. See Gerami*, 666 S.W. 2d at 241-42. Further, under the binding authority of *Eggemeyer*, an award of *any* amount of Appellant's separate property to Appellee would constitute unconstitutional divestiture of one's separate property and be grounds by itself for reversal and remand. *See Eggemeyer*, 554 S.W.2d at 138-41.

Notably, the trial court seems to have arbitrarily decided that Terry's separate property interest was worth only $20,000. 4 R.R. at 20-21. The record does not indicate **any** basis for the trial court's decision that Terry's 10.8 acres of separate property was worth only $20,000. 4 R.R. at 20-21; C.R. 198-201 (*Findings of Fact and Conclusions of Law*); *see also* C.R. 110-70 (*Final Divorce Decree*). Instead, the record indicates that Terry's 10.8 acres of separate property should be worth *at least* $127,645 as that is how much he paid for it in 2009, although arguably it has significantly appreciated since 2009. 5 R.R. at pdf pp. 17-21.

36

In divorce proceedings, the value of property is typically based on its fair market value, which is defined as the price a willing buyer, under no obligation to buy, would pay to a willing seller, under no obligation to sell. *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001); *Mandell v. Mandell*, 310 S.W.3d 531, 536 (Tex. App.—Fort Worth 2010, pet denied). The property-owner rule establishes that an owner is qualified to testify to the value of his own property even when he is not an expert. *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012); *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852-53 (Tex. 2011); *see also* Tex. R. Evid. 701. This rule is based "on the presumption that an owner is familiar with his property and its value," and it "is an exception to the requirement that a witness must otherwise establish his qualifications to express an opinion on [property] values." *Justiss,* 397 S.W.3d at 157. This rule is also applicable in divorce cases. *Banker v. Banker*, 517 S.W.3d 863, 871 (Tex. App.—Corpus Christi-Edinburg 2017, pet. denied). "Evidence of price paid and any other relevant factors may be offered…" *Justiss,* 397 S.W.3d at 159. Here, Terry introduced evidence that he paid $127,645 for the 10.8 acres he purchased prior to the marriage. 5 R.R. at

pdf pp. 17-21.

Other evidence in the record is that in a sale of 44 acres that included Terry's 10.8 acres, those 44 acres sold for a net profit of $385,935.33, or $8,771.36 per acre. *See* C.R. 164-66, 5 R.R. at pdf pp. 17-21. If one arrives at a value by saying that 10.8 acres is approximately ¼ of 44 acres, that would have equated to Terry's separate property having a value of $96,483.83. If one assigns value based on a per acre basis—*i.e.,* 10.8 x $8,771.36—that would equate to Terry's 10.8 acres having a value of $94,729.58. Any of these amounts are well more than the $20,000 value that the trial court awarded Terry for his 10.8 acres of separate property.

Other proper valuations include: 1) A sworn inventory and appraisement. *In re Marriage of Scott*, 117 S.W.3d 580, 584-85 (Tex. App.—Amarillo 2003, no pet.); 2) A real property appraisal. *See, e.g., Phillips*, 75 S.W.3d at 574; and 3) The value on the county appraisal district's tax roll. *See In re Marriage of Scott*, 117 S.W.3d at 585. However, this valuation method is problematic as property values are typically lower in tax records. *Id*.

An appellate court reviews a trial court's valuation of property in a divorce under an abuse of discretion standard. *See Phillips*, 75 S.W.3d at

38

574. The test for abuse of discretion is "whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, S.W.2d 238, 241-42 (Tex. 1985). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.* at 242; *Smithson*, 665 S.W.2d at 443; *Landry*, 458 S.W.2d at 651. Here, the court acted without reference to any guiding rules and principles. There is nothing in the reporter's record, the clerk's record, the court's orders, or the court's *Findings of Fact and Conclusions of Law* to support the trial court's finding that Terry's 10.8 acres were worth only $20,000. *See, e.g.,* C.R. 198-201; 4 R.R. at 20-21; C.R. 110-70 (*Final Divorce Decree*).

However, evidence of the property's value is in the record because Terry produced documents showing that he purchased the property in April of 2009 for $127,645. 5 R.R. at 17-21. Notably, April of 2009 was shortly after the 2008 housing crash when property values were extremely low. Thus, it stands to reason that sixteen years later Terry's 10.8 acres would be worth *at least* as much as he paid for that acreage in 2009. There is also the evidence in the record that the 44-acre parcel of land containing the 10.8 acres sold for a net of $385,935.33, or a net profit of $8,771.36 per acre. *See* C.R. 164-66, 5 R.R. at pdf pp. 17-21.

The record does not indicate that the trial court attempted any sort of analysis or referenced any sort of guidelines, guiding principles, tax records, inventory, or any sort of appraisal in determining that Terry's separate property interest was worth only $20,000. 4 R.R. at 20-21; C.R. 198-201 (*Findings of Fact and Conclusions of Law*); *see also* C.R. 110-70 (*Final Divorce Decree*). Its ruling was arbitrary and unsupported by the record. Additionally, it is not necessary for Terry to show harm because divestiture of separate property is reversible error as a matter of law. *Eggemeyer,* 554 S.W.2d at 140, 142; *Rivera*, 441 S.W.3d at 424. Further, even a mischaracterization of a portion or "some" of a spouse's separate property as community property followed by an award of that property to the other spouse is sufficient for an appellate court to find that the trial court abused its discretion and reversibly errored. *Kelly*, 634 S.W.3d at 348-52, 362-63; *see also Sharma*, 302 S.W.3d at 360. *Kelly* presents a case similar to the case here wherein the trial court mischaracterized the husband's 401(k)—that he had contributed to for fifteen years prior to the marriage—as entirely community property and awarded over seventy percent of its value to the wife. *Kelly*, 634 S.W.3d at 349-352. Finding that a portion of the value of the 401(k) was separate property, the Court

of Appeals reversed and remanded the entire case for a new property division consistent with a recognition of the husband's separate property interest in the 401(k). *Id.* Notably, the Court of Appeals in *Kelly* did not attempt to determine what value to assign to the community portion versus the separate property portion of the 401k. *Id.* That was left for the trial court to decide on remand. *Id.* However, even a misallocation, misvaluation, or mischaracterization of "some" of a spouse's separate property as community is all that is needed for a finding that the trial court abused its discretion and reversibly errored. *See Kelly*, 634 S.W.3d at 349-52; *see also Sharma*, 302 S.W.3d at 360.

In sum, the entire property division must be reversed and remanded for a determination of the value of Terry's separate property based on established valuation methods and for a just and equitable division of the community estate with Terry's separate property interest removed from the community estate.

V. **The trial court committed reversible error by awarding Appellee 100 percent of the value of certain personal property rather than making a just and right division of that property.**

The court ordered the sale of multiple items of personal property that belonged primarily to Terry. C.R. at 74-75. Terry turned over almost

41

all of these items which netted the community (after paying the receiver ten percent to sell the items) over $45,000. C.R. 199.

The trial court's *Order for Sale of Personal Property of the Parties* ("Order") provided that:

The Court **HEREYBY ORDERS** that the following personal properties, listed herein, shall be immediately sold pursuant to the Court's instructions contained herein:

| | |
|---|---|
| Exhibit 6: | John Deere Skid Steer |
| Exhibit 8: | 32 ft Tiger flatbed trailer (Shop Built) |
| Exhibit 9: | 20 ft lowboy, black gooseneck trailer with sides |
| Exhibit 10: | 15 ft Batwing Shredder |
| Exhibit 12: | TRX Yellow Four-wheeler |
| Exhibit 13: | Kubota Cab Tractor |
| Exhibit 14: | Dodge 2500 Single Cab welding truck w/ welder; VIN: 3B7KF23D6VM508074 |
| Exhibit 15: | 2015 34-foot Keystone Bunkhouse Camper; VIN: 4YDT34B29ED423294 |
| Exhibit 18: | 2002 Dodge Ram 3500; VIN: 3B6MC36622M245764 |
| Exhibit 20: | 1998 Dodge; VIN: 3B6MC3657WN274464 |
| Exhibit 22: | 2006 Silver Dodge Dually (no motor) |
| Exhibit 23: | Shop Heater (Gas) |
| Exhibit 28: | Small pressure washer |

2|

75

**Exhibit 29:** Timeshare with Holiday Inn
**Exhibit 31:** Shop door
**Exhibit 32:** Connex/ Shipping container
**Exhibit 33:** Lawn mower trailer
**Item 34:** Gun safe
**Item 35:** 2nd Scag mower

C.R. at 74-76.

The court contended that the following items were not produced in an appropriate form to the receiver:

14. To effect a just and right division of the marital estate, the Court ordered the sale of personal property by a court appointed receiver.

15. Terry Brent Williams interfered with the court's order by failing to deliver the following items to the receiver:

   a. John Deere skid steer.

   b. 15ft batwing shredder and Kubota cab

   c. Dodge 3500 single cab welding truck.

   d. 2002 Dodge Ram 3500

   e. 1998 Dodge 3500

   f. Shop Door.

16. Terry Brent Williams' interference reduced the value of the personal property subject to sale in the amount of $12,800.00.

C.R. at 199.

With respect to the Kubota tractor and the John Deere skid steer, Terry **_did_** produce the Kubota tractor and the John Deere skid steer. However, the court decided that he was in violation of its Order as he did not produce the tractor's attachments even though the Order had only

43

stated he needed to produce both the tractor and skid steer and did not mention their attachments. C.R. at 74-76. Terry explained:

> Q. Mr. Warren had indicated that there were things missing, problems with some of the equipment. Like, for instance, some of the skid steer, he had indicated that there were skid missing, pallet forks missing, grapple missing. What was your understanding of the equipment, and the status of the equipment before it was delivered to Mr. Warren?
>
> A. I thought it was just the skid steer. If I had known it was the forks, and the grapple, and the bucket, I would have taken it all with it. …Q. Okay. And then, the hydraulics on the Kubota, and the bucket on the Kubota were missing. Can you explain to the Court that situation?
>
> A. I put a loader on the tractor last summer, so I took it off, because it wasn't -- that wasn't in the picture, or the paperwork.

4 R.R. at 29-30. As can be seen above, the Order does not state that Terry was supposed to include the attachments (which are extra pieces of equipment not typically sold with a tractor[6]) with the Kubota cab tractor. C.R. 74-76. With respect to the John Deere skid steer, the Order also does not reference the attachments. C.R. 74-76.

When construing the meaning of a court order or judgment, the goal

---

[6] *See* Kubota, USA, "Build my Kubota," <u>Kubota Tractor - Build My Kubota - M60 Series</u>, retrieved September 4, 2025; Ewald Kubota, <u>Equipment for Sale - Ewald Kubota</u>, retrieved September 4, 2025.

is to "determine not what the trial court should have done but, if possible, what the court actually did." *Shanks v. Treadway*, 110 S.W.3d 444, 446 (Tex. 2003); *Bush v. Yarborough Oil &* Gas, 705 S.W.3d 451, 459 (Tex. App—El Paso 2024, pet. denied). Additionally, courts apply the ordinary and generally accepted meaning of words unless the terms are defined or used in a technical or specialized way. *Bush*, 705 S.W.3d at 459. While the above authority arose in the context of appellate courts interpreting court orders rather than an individual interpreting an order, an individual should not be held to a higher standard than appellate judges. Here, Terry complied with the literal language of the court's Order and the court punished him for it. The court here was expecting Terry to know what it meant rather than what it wrote.

Further, when a tractor or skid steer such as the ones in the order are sold at a dealership, any attachments are often sold separately from the tractor itself. Thus, it is not strange that Terry would remove the extra attachments since the Order did not include them. The reason attachments are typically sold separately is because they are extremely heavy duty and will last a lifetime, but a tractor's engine and drivetrain do not last as long. Buyers of farm equipment will often have to replace

a tractor or skid steer before they need to replace the attachments.

Another item that the court claim was wrongly withheld was a shop door. The court had stated at the hearing, "Now, we're not going to take a garage door off the garage, or we're not going to take a -- things like that within reason. We're just going to tally the value of it, and then I'll deal with that." 3 R.R. at 15. Then the court turned around and penalized Terry for not taking the shop door off of the shop and awarded 100 percent value to the wife. C.R. at 199.

The appraiser valued the front-end loader at $3,000, the bucket at $1,000, the hydraulic grapple at $2,500, and the pallet forks at $1,000. 4 R.R. at 4. The receiver valued the shop door at $800. 4 R.R. at 6. These items total $8,300. *See* 4 R.R. at 4. Additionally, $1,000 in repairs had to be made on the hydraulics system of the skid steer. These items totaled $9,300.

The court awarded the wife the full value of the $8,300 for these items and accessed the full value of the $1,000 repair against Terry. 4 R.R. at 45; C.R. at 198-99. This was an abuse of discretion. Terry did nothing wrong in not turning over items that were either not in a court's Order or that the Court had verbally told him he did not need to produce.

Division in divorce proceedings must be "just and right." TEX. FAM. CODE § 7.001. Thus, it was error for the court to award the full value of these items to Appellee and award no value to Terry.

Where error affects the trial court's just and right division of property, the appellate court must reverse and remand the community property estate back to the trial court for a new division. *See Jacobs*, 687 S.W.2d at 733. The total of these errors was approximately $9,300. *See* C.R. 199-200. The total value of the community estate was approximately $303,237 with Terry's separate property claim removed. Thus, the court's errors caused 3.1 percent of the community estate to be wrongly apportioned.

In *McElwee*, the Houston Court of Appeals held that an error that had "more than a mere *de minimis* effect upon the trial court's division" required the Appellate Court to remand the community estate to the trial court for a just and right division. *McElwee*, 911 S.W.2d at 190. In that case, an error that constituted approximately three percent of the total estate was more than *de minimis* and warranted remand. *Id.* at 188-90. Here, the error constituted 3.1 percent of the total community estate and, therefore, remand is warranted.

**VI.    The court committed reversible error by divesting Terry of the value of his separate property welding equipment.**

The Order required Terry to produce a 2500 Dodge truck to the receiver for sale. C.R. 74-76. The receiver testified that while the truck was delivered to him, it was delivered to him with different tires and with the welding equipment removed from the truck. 4 R.R. at 5. The receiver valued the missing welding equipment at $1,000, but did not seem to place a value on the difference between the old tires and the new ones. *See* 4 R.R. at 5.

Terry explained why he changed the tires:

Q. The wheels on the -- on the welding [truck] machine, he said the wheels and tires had been changed from what he had seen. What happened with that?

A. It had a bulge on the tire, so I took them off and put -- They're not mud tires, but they were good street tires.

4 R.R. at 29-30

With respect to the welding equipment, Terry testified that the welding equipment was his separate property that he had before marriage. 4 R.R. at 38-39. There was no evidence in the record to refute this. Notably, Terry ***did*** produce the truck that was the subject of the court's Order but removed the welding equipment from it because it had

been his prior to marriage and he could use it to earn a living as he had previously been employed as a welder. 4 R.R. at 38-39.

The receiver valued the missing welding equipment at $1,000. 4 R.R. at 5. While the receiver complained that the tires had been changed, he did not state a value for the difference between the new tires and the old tires. 4 R.R. at 5.

A trial court **may not** divest a party of his or her separate property because the nature of separate property is determined by the Texas Constitution, rather than by what is "just and right." *Eggemeyer,* 554 S.W.2d at 140, 142 (emphasis added). Thus, the trial court here errored because it took the value of the separate property welding equipment and awarded it entirely to the wife. *See* 4 R.R. at 19 (this was included in the $12,800 amount awarded to the wife); C.R. 199-200. This was reversible error.

## VII. The trial court committed reversible error by requiring Terry to pay for Appellee's attorney's fees.

The court's award of the wife's attorney's fees for punitive purposes was also an abuse of discretion. C.R. at 198-201. Attorney fees are generally not recoverable from the other party in the absence of a specific statutory or contractual provision. *Turner v. Turner*, 385 S.W.2d 230, 233

(Tex. 1964); *Wright v. Wright*, 280 S.W.3d 901, 915 (Tex. App.—Eastland 2009, no pet.).

> The court indicated it was angry at Terry for not settling the case:

> [T]hese parties out there made it just astronomically complicated. I gave them an opportunity through mediation, through that full morning of that last hearing, we negotiated to trade what they wanted to trade, and here we are.

3 R.R. at 15.

> This anger affected the just division of the property:

> In addition to the conduct, and misleading the Court, not following directions, [and] making this case a lot harder than it had to be, I'm assessing the attorney's fees…

4 R.R. at 45.

The "misleading" and "not following directions" referred to the acts described above, which were: 1) Terry not turning over the tractor attachments that were not the subject of the Order, 2) Terry removing his separate property welding equipment from a truck he turned over, 3) putting new tires on a truck he turned over because the old ones were defective, and 4) not removing a shop door from a shop that the judge told him in court on the record that he didn't have to remove.

Additionally, the "making things harder than they have to be" and the judge's comments about the couple not settling in mediation were, to

the extent that they affected his award of attorney's fees, improper. While a court can compel litigants to engage in mediation, they cannot force or mandate them to settle their differences. *In re City of McAllen*, 677 S.W.3d 746 (Tex. 2023). Penalizing a party because he would not settle a case in mediation goes against the voluntary nature of mediation. *In re Acceptance Ins. Co.*, 33 S.W.3d at 452-54; *see also* TEX. CIV. PRAC. & REM. CODE § 154.002. The statutory framework regarding mediation underscores that mediation is intended to be a cooperative and non-coercive process. *See In re Acceptance*, 33 S.W.3d at 452-54; *see also* TEX. CIV. PRAC. & REM. CODE § 154.002. In fact, the way Terry negotiated during mediation should never have been disclosed to the trial court. *Texas Parks and Wildlife v. Davis*, 988 S.W.2d 370, 375 (Tex. App.—Austin 1999, no pet.); *In re Acceptance*, 33 S.W.3d at 452-54. Thus, the trial court's act of awarding the Appellee her attorney's because Appellant "made this case a lot harder than it had to be" (i.e., didn't settle) and made it "astronomically complicated" because he wouldn't settle, was reversible error.

Division in divorce proceedings must be "just and right." TEX. FAM. CODE § 7.001. Where error affects the trial court's just and right division

51

of property, the appellate court must reverse and remand the community property estate back to the trial court for a new division. *See Jacobs*, 687 S.W.2d at 733. The wife's attorney's fees that were borne solely by Terry were $8,018.50. *See* C.R. 199-200. The total value of the community estate was approximately $303,237 (with Terry's separate property claim removed). *See* C.R. 198-201. Thus, the court's errors caused 2.6 percent of the community estate to be wrongly apportioned. If the Court believes that this 2.6 percent had "more than a mere *de minimis* effect upon the trial court's division," then the case should be remanded for a just and right division of the community estate. *McElwee*, 911 S.W.2d 182, 190 (Tex. App.—Houston [1st Dist.] 1995, writ den'd).

## CONCLUSION AND PRAYER

For the foregoing reasons, Appellant, Terry Brent Williams, respectfully requests this Court: (1) vacate the Final Decree of Divorce as to the child support order and remand this matter to the trial court for an order consistent with a finding that Terry's current income is only approximately $460 per week gross or $407 net; and (2) vacate the Final Decree of Divorce as to the property division and remand this matter to the trial court for a just and right division of the marital estate

confirming Terry's separate property interest in 10.8 acres of land that was sold and use proper valuation methods to determine the value of that land; and (3) vacate the Final Decree of Divorce as to the property division and remand this matter to the trial court for a just and right division of the marital estate without the court's punitive $9,300 award to Appellee against Appellant; (4) vacate the Final Decree of Divorce as to the property division and remand this matter to the trial court for a just and right division of the marital estate confirming Terry's separate property interest in his welding equipment; and (5) vacate the Final Decree of Divorce as to the property division and remand this matter to the trial court for a just and right division of the marital estate without the court awarding Terry pay $8,018.50 for Appellee's attorney's fees. Terry also respectfully requests all other relief, whether at law or in equity, to which he may show himself justly entitled.

September 11, 2025

Respectfully Submitted,

**CLOUTHIER LAW, PLLC**

*/s/Susan J. Clouthier*
Susan J. Clouthier
Tex. Bar No. 24062673
Elizabeth M. Steiner

53

Tex. Bar No. 24057028
9950 Woodloch Forest Dr., Ste. 1300
The Woodlands, Texas 77380
Tel: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorneys for Appellant**
**Terry Brent Williams**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2025, a true and correct copy of Appellant's Brief was e-served to:

*via e-filing*

Clint F. Sare
Tex. Bar No. 00788354
P.O. Box 1694
Bryan, Texas 77806
Tel: (979) 822-1505
cfs@sarelaw.com

**Attorney for Respondent
Tracy Leeann Williams**

*/s/ Susan J. Clouthier*
Susan J. Clouthier

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2) because this brief contains 10,199 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1). This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because this brief has been prepared in a conventional typeface using Microsoft Word 365 in Century Schoolbook font size 14.

*/s/ Susan J. Clouthier*
Susan J. Clouthier

# APPENDIX

Final Decree of Divorce ........................................................................ 57

Findings of Fact and Conclusions of Law ............................................ 124

Tex. Civ. Prac. & Rem. Code § 154.002 .............................................. 128

Tex. Fam. Code § 3.001 ....................................................................... 129

Tex. Fam. Code § 3.002 ....................................................................... 130

Tex. Fam. Code § 7.001 ....................................................................... 131

Tex. Fam. Code § 154.123 ................................................................... 132

Tex. Fam. Code § 154.125 ................................................................... 134

Tex. Fam. Code § 154.130 ................................................................... 136

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TERRY BRENT WILLIAMS | § | |
| AND | § | 369TH JUDICIAL DISTRICT |
| TRACY LEEANN WILLIAMS | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███████████████, A CHILD | § | LEON COUNTY, TEXAS |

## FINAL DECREE OF DIVORCE

FILED
CASSANDRA NOEY WILSON, DISTRICT CLERK
LEON COUNTY, TEXAS

MAR 1 8 2025

BY _Carol Johnson_

On the 25th day of February 2025, the Court heard this case.

### Appearances

Petitioner, **TERRY BRENT WILLIAMS**, appeared in person and through attorney of record, **JEFFREY L. COE**, and announced ready.

Respondent, **TRACY LEEANN WILLIAMS**, appeared in person and through attorney of record, **JOHN R. BANKHEAD**, and announced ready.

### Record

The making of a record of testimony was waived by the parties with the consent of the Court.

### Jurisdiction and Domicile

The Court finds that the pleadings of Respondent are in due form and contain all the allegations, information, and prerequisites required by law. The

Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Respondent had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

## *Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

## *Divorce*

The Court finds that Petitioner and Respondent were married on September 10th, 2011.

**IT IS ORDERED AND DECREED** that **TERRY BRENT WILLIAMS**, Petitioner, and **TRACY LEEANN WILLIAMS**, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

## *Child*

The Court finds that Petitioner and Respondent are the parents of the following child:

2.

Name: ████████████████████

Sex: Female

Birth date: ████████████████

Home state: Texas

Social Security number: ████████████

The Court finds no other children of the marriage are expected.

## *Parenting Plan*

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the child, possession of and access to the child, child support, and optimizing the development of a close and continuing relationship between each party and the child constitute the parties' agreed parenting plan.

## *Conservatorship*

The Court, having considered the circumstances of the parents and of the child, finds that the following orders are in the best interest of the child.

**IT IS ORDERED** that **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** are appointed parent Joint Managing Conservators of the following child: ████████████████████████

**IT IS ORDERED** that, at all times, **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** as parent Joint Managing Conservators, shall have the

3

following rights:

1.    the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child;

2.    the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

3.    the right of access to medical, dental, psychological, and educational records of the child;

4.    the right to consult with a physician, dentist, or psychologist of the child;

5.    the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.    the right to attend school activities, including school lunches, performances, and field trips;

7.    the right to be designated on the child's records as a person to be notified in case of an emergency;

8.    the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

9.    the right to manage the estate of the child to the extent the estate has been created by the parent's family or by the parent, other than by the community or joint property of the parent.

**IT IS ORDERED** that, at all times, **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** as parent Joint Managing Conservators, shall each have the

113

60

following duties:

1.	the duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child;

2.	the duty to inform the other conservator of the child if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Texas Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. **IT IS ORDERED** that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the fortieth day after the date the conservator of the child begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. **IT IS ORDERED** that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. **WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;**

3.	the duty to inform the other conservator of the child if the conservator establishes a residence with a person who the conservator knows is the subject of a final protective order sought by an individual other than the conservator that is in effect on the date the residence with the person is established. **IT IS ORDERED** that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the conservator establishes residence with the person who is the subject of the final protective order. **WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;**

4.	the duty to inform the other conservator of the child if the conservator resides with, or allows unsupervised access to a child by, a person who is the subject of a final protective order sought by the conservator after the expiration of sixty day period following the date the final protective order is

5.

issued. **IT IS ORDERED** that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the ninetieth day after the date the final protective order was issued. **WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;** and

5.    the duty to inform the other conservator of the child if the conservator is the subject of a final protective order issued after the date of the order establishing conservatorship. **IT IS ORDERED** that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the final protective order was issued. **WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.**

**IT IS ORDERED** that, during her periods of possession, **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** as parent Joint Managing Conservators shall have the following rights and duties:

1.    the duty of care, control, protection, and reasonable discipline of the child;

2.    the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.    the right to consent for the child to medical and dental care not involving an invasive procedure; and

4.    the right to direct the moral and religious training of the child.

**IT IS ORDERED** that **TERRY BRENT WILLIAMS**, as a parent Joint Managing Conservator, shall have the following rights and duty:

6

1.      the independent right to consent to medical, dental, and surgical treatment involving invasive procedures;

2.      the independent right to consent to psychiatric and psychological treatment of the child;

3.      the independent right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the child;

4.      the independent right to represent the children in legal action and to make other decisions of substantial legal significance concerning the child;

5.      the independent right to consent to marriage and to enlistment in the armed forces of the United States;

6.      the independent right to make decisions concerning the child's education;

7.      except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the child;

8.      except when a guardian of the child's estates or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child in relation to the child's estates if the child's action is required by a state, the United States, or a foreign government;

9.      the right, subject to the agreement of the other conservator, to apply for passports for the child, to renew the child's passports, and to maintain possession of the child's passports; and

10.     the independent duty to manage the estates of the child to the extent the estates have been created by the community or joint property of the parent.

**IT IS ORDERED** that **TRACY LEEANN WILLIAMS**, as a Parent Joint

Managing Conservator, shall have the following rights and duty:

7

1.      the exclusive right to designate the primary residence of the child within, Leon County, Texas, and all Counties contiguous to Leon County;

2.      the independent right to consent to medical, dental, and surgical treatment involving invasive procedures;

3.      the independent right to consent to psychiatric and psychological treatment of the child;

4.      the independent right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

5.      the independent right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

6.      the independent right to consent to marriage and to enlistment in the armed forces of the United States;

7.      the independent right to make decisions concerning the child's education;

8.      except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the child;

9.      except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child in relation to the child's estates if the child's action is required by a state, the United States, or a foreign government;

10.     the right, subject to the agreement of the other conservator, to apply for passports for the child, to renew the child's passports, and to maintain possession of the child's passports; and

11.     the independent duty to manage the estates of the child to the extent the estates have been created by the community or joint property of the parent.

Notwithstanding any provision in this decree to the contrary, **IT IS**

8

117

64

**ORDERED** that **TRACY LEEANN WILLIAMS** shall have the exclusive right to enroll the child in school. Each conservator, during that conservator's period of possession, is **ORDERED** to ensure the child's attendance in the schools in which **TRACY LEEANN WILLIAMS** has enrolled the child.

Except as expressly provided otherwise in this order, **IT IS ORDERED** that all information of which a conservator is required to notify the other conservator and all documents and information that a conservator is required to provide to the other conservator shall be sent in the following manner:

a.  delivery to the recipient at the recipient's electronic mail address as follows or to such other electronic mail address subsequently designated by the recipient:

   **TERRY BRENT WILLIAMS**   terrybwilliams@yahoo.com

   **TRACY LEEANN WILLIAMS** twilliams@freestonemc.com

   and in the event of any change in a recipient's electronic mail address, that recipient is **ORDERED** to notify the other recipient of such change in writing within twenty-four hours after the change or

b.  delivery to the recipient at the recipient's mobile telephone

9 |

65

number by text message as follows or to such other mobile telephone number subsequently designated by the recipient:

**TERRY BRENT WILLIAMS**     **(903) 466-1334**

**TRACY LEEANN WILLIAMS**     **(903) 391-4636**

and in the event of any change in a recipient's electronic mobile telephone number, that recipient is **ORDERED** to notify the other recipient of such change in writing within twenty-four hours after the change.

**IT IS ORDERED** that **TRACY LEEANN WILLIAMS** shall have the exclusive right and duty to prepare and file income tax returns for the estates of ████████ ████████

**IT IS ORDERED** that **TERRY BRENT WILLIAMS** shall provide such information to **TRACY LEEANN WILLIAMS** as is requested to prepare federal income tax returns for the child's estates within thirty days of receipt of a written request for the information, and in no event shall the information be provided later than thirty (30) days from request. As requested information becomes available after that date, **TERRY BRENT WILLIAMS** is **ORDERED** to provide it to **TRACY LEEANN WILLIAMS** within ten days of **TERRY BRENT WILLIAMS'**

receipt of the information.

### *Possession and Access*

**IT IS ORDERED** that nothing in this order shall supersede any term of any protective order or condition of bond, probation, or parole.

### 1. Standard Possession Order

**IT IS ORDERED** that each conservator shall comply with all terms and conditions of this Standard Possession Order. **IT IS ORDERED** that this Standard Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Standard Possession Order. **IT IS, THEREFORE, ORDERED**:

(a)    Definitions

1.    In this Standard Possession Order "school" means the elementary or secondary school in which the child is enrolled or, if the child is not enrolled in an elementary or secondary school, the public school district in which the child primarily resides.

2.    In this Standard Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)    Mutual Agreement or Specified Terms for Possession

**IT IS ORDERED** that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is **ORDERED** that the conservators shall have possession of the child under the specified terms set out in this Standard Possession Order.

(c)    When Parents Reside 100 Miles or Less Apart

Except as otherwise expressly provided in this Standard Possession Order, when **TERRY BRENT WILLIAMS** resides 100 miles or less from the primary residence of the child, **TERRY BRENT WILLIAMS** shall have the right to possession of the child as follows:

1.    Weekends –

On weekends that occur during the regular school term, beginning at 6:00 P.M., on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

On weekends that do not occur during the regular school term, beginning at 6:00 P.M., on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

2.    Weekend Possession Extended by a Holiday –

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by **TERRY BRENT WILLIAMS** begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Friday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 P.M. on the immediately preceding Thursday.

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by **TERRY BRENT WILLIAMS** ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, that weekend period of possession shall end at 6:00 P.M. on that Monday.

Except as otherwise expressly provided in this Standard

12|

68

Possession Order, if a weekend period of possession by **TERRY BRENT WILLIAMS** ends on or is immediately followed by a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 P.M. on that Monday.

3.    Thursdays - On Thursday of each week during the regular school term, beginning at 6:00 P.M. and ending at 8:00 P.M. with visits to take place in Leon County, Texas.

4.    Spring Vacation in Even-Numbered Years - In even-numbered years, beginning at 6:00 P.M. for the school's spring vacation and ending at 6:00 P.M. on the day before school resumes after that vacation.

5.    Extended Summer Possession by **TERRY BRENT WILLIAMS** –

With Written Notice by April 1 - **If TERRY BRENT WILLIAMS** gives **TRACY LEEANN WILLIAMS** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **TERRY BRENT WILLIAMS** shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 P.M. on each applicable day.

Without Written Notice by April 1 - If **TERRY BRENT WILLIAMS** does not give **TRACY LEEANN WILLIAMS** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **TERRY BRENT WILLIAMS** shall have possession of the child for thirty consecutive days in that year beginning at 6:00 P.M. on July 1 and ending at 6:00 P.M. on July 31.

13

Notwithstanding the Thursday periods of possession during the regular school term and the weekend periods of possession **ORDERED** for **TERRY BRENT WILLIAMS**, it is expressly **ORDERED** that **TRACY LEEANN WILLIAMS** shall have a superior right of possession of the child as follows:

1. Spring Vacation in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 P.M. for the school's spring vacation and ending at 6:00 P.M. on the day before school resumes after that vacation.

2. Summer Weekend Possession by **TRACY LEEANN WILLIAMS** - If **TRACY LEEANN WILLIAMS** gives **TERRY BRENT WILLIAMS** written notice by April 15 of a year, **TRACY LEEANN WILLIAMS** shall have possession of the child on any one weekend beginning at 6:00 P.M. on Friday and ending at 6:00 P.M. on the following Sunday during any one period of the extended summer possession by **TERRY BRENT WILLIAMS** in that year, provided that **TRACY LEEANN WILLIAMS** picks up the child from **TERRY BRENT WILLIAMS** and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession. Not later than the fifteenth day before the Friday that begins the designated weekend, **TERRY BRENT WILLIAMS must** give **TRACY LEEANN WILLIAMS** written notice of the location at which **TRACY LEEANN WILLIAMS** is to pick up and return the child.

3. Extended Summer Possession by **TRACY LEEANN WILLIAMS** - If **TRACY LEEANN WILLIAMS** gives **TERRY BRENT WILLIAMS** written notice by April 15 of a year or gives **TERRY BRENT WILLIAMS** fourteen days' written notice on or after April 16 of a year, **TRACY LEEANN WILLIAMS** may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by **TERRY BRENT WILLIAMS** shall not take place in that year, provided that

14

the weekend so designated does not interfere with **TERRY BRENT WILLIAMS'** period or periods of extended summer possession or with Father's Day possession.

(d)     Parents Who Reside More Than 100 Miles Apart

Except as otherwise expressly provided in this Standard Possession Order, when **TERRY BRENT WILLIAMS** resides more than 100 miles from the residence of the child, **TERRY BRENT WILLIAMS** shall have the right to possession of the child as follows:

1.     Weekends - Unless **TERRY BRENT WILLIAMS** elects the alternative period of weekend possession described in the next paragraph, **TERRY BRENT WILLIAMS** shall have the right to possession of the child on weekends beginning at 6:00 P.M., on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

Alternate Weekend Possession - In lieu of the weekend possession described in the foregoing paragraph, **TERRY BRENT WILLIAMS** shall have the right to possession of the child not more than one weekend per month of **TERRY BRENT WILLIAMS** choice beginning at 6:00 P.M. on the day school recesses for the weekend and ending at 6:00 P.M. on the day before school resumes after the weekend. **TERRY BRENT WILLIAMS** may elect an option for this alternative period of weekend possession by giving written notice to **TRACY LEEANN WILLIAMS** within ninety days after the parties begin to reside more than 100 miles apart. If **TERRY BRENT WILLIAMS** makes this election, **TERRY BRENT WILLIAMS** shall give **TRACY LEEANN WILLIAMS** fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day possession below.

2.     Weekend Possession Extended by a Holiday –

15

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by **TERRY BRENT WILLIAMS** begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 P.M. on the immediately preceding Thursday.

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by **TERRY BRENT WILLIAMS** ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, that weekend period of possession shall end at 6:00 P.M. on that Monday.

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by **TERRY BRENT WILLIAMS** ends on or is immediately followed by a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 P.M. on that Monday.

3. Spring Vacation in All Years - Every year, beginning at 6:00 P.M. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 P.M. on the day before school resumes after that vacation.

4. Extended Summer Possession by **TERRY BRENT WILLIAMS** –

With Written Notice by April 1 - If **TERRY BRENT WILLIAMS** gives **TRACY LEEANN WILLIAMS** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **TERRY BRENT WILLIAMS** shall have possession of the

16

child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 P.M. on each applicable day.

Without Written Notice by April 1 - If **TERRY BRENT WILLIAMS** does not give **TRACY LEEANN WILLIAMS** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **TERRY BRENT WILLIAMS** shall have possession of the child for forty-two consecutive days beginning at 6:00 P.M. on June 15 and ending at 6:00 P.M. on July 27 of that year.

Notwithstanding the weekend periods of possession **ORDERED** for **TERRY BRENT WILLIAMS**, it is expressly **ORDERED** that **TRACY LEEANN WILLIAMS** shall have a superior right of possession of the child as follows:

1. Summer Weekend Possession by **TRACY LEEANN WILLIAMS** - If **TRACY LEEANN WILLIAMS** gives **TERRY BRENT WILLIAMS** written notice by April 15 of a year, **TRACY LEEANN WILLIAMS** shall have possession of the child on any one weekend beginning at 6:00 P.M. on Friday and ending at 6:00 P.M. on the following Sunday during any one period of possession by **TERRY BRENT WILLIAMS** during **TERRY BRENT WILLIAMS'** extended summer possession in that year, provided that if a period of possession by **TERRY BRENT WILLIAMS** in that year exceeds thirty days, **TRACY LEEANN WILLIAMS** may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that **TRACY LEEANN WILLIAMS** picks up the child from **TERRY BRENT WILLIAMS** and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

17

2. Extended Summer Possession by **TRACY LEEANN WILLIAMS** - If **TRACY LEEANN WILLIAMS** gives **TERRY BRENT WILLIAMS** written notice by April 15 of a year, **TRACY LEEANN WILLIAMS** may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which **TERRY BRENT WILLIAMS** shall not have possession of the child, provided that the period or periods so designated do not interfere with **TERRY BRENT WILLIAMS'** period or periods of extended summer possession or with Father's Day possession. These periods of possession shall begin and end at 6:00 P.M. on each applicable day.

(e) Holidays

Notwithstanding the weekend and Thursday periods of possession of **TERRY BRENT WILLIAMS**, **TRACY LEEANN WILLIAMS** and **TERRY BRENT WILLIAMS** shall have the right to possession of the child as follows:

1. Christmas Holidays in Even-Numbered Years - In even-numbered years, **TERRY BRENT WILLIAMS** shall have the right to possession of the child beginning at 6:00 P.M. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and **TRACY LEEANN WILLIAMS** shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 P.M. on the day before school resumes after that Christmas school vacation.

2. Christmas Holidays in Odd-Numbered Years - In odd-numbered years, **TRACY LEEANN WILLIAMS** shall have the right to possession of the child beginning at 6:00 P.M. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and **TERRY BRENT WILLIAMS** shall have

the right to possession of the child beginning at noon on December 28 and ending at 6:00 P.M. on the day before school resumes after that Christmas school vacation.

3.      Thanksgiving in Odd-Numbered Years - In odd-numbered years, **TERRY BRENT WILLIAMS** shall have the right to possession of the child beginning at 6:00 P.M. on the day the child is dismissed from school before Thanksgiving and ending at 6:00 P.M. on the Sunday following Thanksgiving.

4.      Thanksgiving in Even-Numbered Years - In even-numbered years, **TRACY LEEANN WILLIAMS** shall have the right to possession of the child beginning at 6:00 P.M. on the day the child is dismissed from school before Thanksgiving and ending at 6:00 P.M. on the Sunday following Thanksgiving.

5.      Child's Birthday - If a parent is not otherwise entitled under this Standard Possession Order to present possession of a child on the child's birthday, that parent shall have possession of the child and the child's minor siblings beginning at 6:00 P.M. and ending at 8:00 P.M. on that day, provided that that parent picks up the children from the other parent's residence and returns the children to that same place.

6.      Father's Day - **TERRY BRENT WILLIAMS** shall have the right to possession of the children each year, beginning at 6:00 P.M. on the Friday preceding Father's Day and ending at 6:00 P.M. on Father's Day, provided that if **TERRY BRENT WILLIAMS** is not otherwise entitled under this Standard Possession Order to present possession of the children, he shall pick up the child from **TRACY LEEANN WILLIAMS** home located at **1817 East Railroad St., Buffalo, Texas 75831** and return the children to that same place.

7.      Mother's Day - **TRACY LEEANN WILLIAMS** shall have the right to possession of the children each year, beginning at 6:00 P.M. on the Friday preceding Mother's Day and ending at 6:00 P.M.

on Mother's Day, provided that if **TRACY LEEANN WILLIAMS** is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall pick up the children from **TRACY LEEANN WILLIAMS** home located at <u>**1817 East Railroad St., Buffalo, Texas 75831**</u> and return the child to that same place.

(f)     Undesignated Periods of Possession

**TRACY LEEANN WILLIAMS** shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for **TERRY BRENT WILLIAMS**.

(g)     General Terms and Conditions

Except as otherwise expressly provided in this Standard Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.     Surrender of Child by **TRACY LEEANN WILLIAMS** - **TRACY LEEANN WILLIAMS** is **ORDERED** to surrender the child to **TERRY BRENT WILLIAMS** at the beginning of each period of **TERRY BRENT WILLIAMS's** possession at **TRACY LEEANN WILLIAMS** home located at <u>**1817 East Railroad St., Buffalo, Texas 75831**</u>.

2.     Return of Child by **TERRY BRENT WILLIAMS** - **TERRY BRENT WILLIAMS** is **ORDERED** to return the child to Respondent, **TRACY LEEANN WILLIAMS** at **TRACY LEEANN WILLIAMS** home located at <u>**1817 East Railroad St., Buffalo, Texas 75831**</u>.

3.     Surrender of Child by **TERRY BRENT WILLIAMS** - **TERRY BRENT WILLIAMS** is **ORDERED** to surrender the child to **TRACY LEEANN WILLIAMS**, if the child is in **TERRY BRENT WILLIAMS 's** possession or subject to **TERRY BRENT WILLIAMS's** control, at the beginning of each period of **TRACY LEEANN WILLIAMS 's** exclusive periods of possession, at **TRACY LEEANN**

20

76

**WILLIAMS** home located at <u>1817 East Railroad St., Buffalo, Texas 75831</u>.

4.    Return of Child by **TRACY LEEANN WILLIAMS** - **TRACY LEEANN WILLIAMS** is **ORDERED** to return the child to **TERRY BRENT WILLIAMS**, if **TERRY BRENT WILLIAMS** is entitled to possession of the child, at the end of each of **TRACY LEEANN WILLIAMS's** exclusive periods of possession, at **TRACY LEEANN WILLIAMS** home located at <u>1817 East Railroad St., Buffalo, Texas 75831</u>.

5.    Personal Effects    Each conservator is **ORDERED** to return with the child with the personal effects that the child brought at the beginning of the period of possession.

6.    Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. **IT IS ORDERED** that a conservator or a designated competent adult be present when the child is picked up or returned.

7.    Inability to Exercise Possession - Each conservator is **ORDERED** to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.    Written Notice - Written notice, including notice provided by electronic mail or facsimile or as otherwise authorized in this order, shall be deemed to have been timely made if received or, if applicable, postmarked before or at the time that notice is due. Each conservator is **ORDERED** to notify the other conservator of any change in the conservator's electronic mail address or facsimile number within twenty-four hours after the change.

This concludes the Standard Possession Order.

2. *Duration*

The periods of possession ordered above apply to the child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

3. *Noninterference with Possession*

Except as expressly provided herein, **IT IS ORDERED** that neither conservator shall take possession of the child during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

4. *Termination of Orders*

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of **TERRY BRENT WILLIAMS** to **TRACY LEEANN WILLIAMS** unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

## Child Support

**IT IS ORDERED** that **TERRY BRENT WILLIAMS** is obligated to pay and shall pay to **TRACY LEEANN WILLIAMS** child support of **ONE THOUSAND SEVEN HUNDRED FIFTY EIGHT DOLLARS AND 00/100 ($1758.00) PER**

22

**MONTH**, with the first payment being due and payable on **OCTOBER 1ST, 2024,** and a like payment being due and payable on the 1st day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.      the child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2.      the child marries;

3.      the child dies;

4.      the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

5.      the child's disabilities are otherwise removed for general purposes.

If the child is eighteen years of age and has not graduated from high school and **TERRY BRENT WILLIAMS's** obligation to support the child has not already terminated, **IT IS ORDERED** that **TERRY BRENT WILLIAMS's** obligation to pay child support to **TRACY LEEANN WILLIAMS** shall not terminate but shall continue for as long as the child is enrolled-

1.      under chapter 25 of the Texas Education Code in an accredited

23

79

secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2.    on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

## *Statement on Guidelines*

In accordance with Texas Family Code section 154.130, the Court makes the following findings and conclusions regarding the child support order made in open court in this case on **FEBRUARY 25TH, 2025:**

1.    The amount of child support ordered by the Court is in accordance with the percentage guidelines.

2.    The net resources of **TERRY BRENT WILLIAMS** per month are **$8,790.60**.

3.    The percentage applied to **TERRY BRENT WILLIAMS's** net resources for child support is **20% percent**.

24

80

### *Withholding from Earnings*

**IT IS ORDERED** that any employer of **TERRY BRENT WILLIAMS** shall be ordered to withhold the child support payments ordered in this order from the disposable earnings of **TERRY BRENT WILLIAMS** for the support of ███████ ███████

**IT IS FURTHER ORDERED** that all amounts withheld from the disposable earnings of **TERRY BRENT WILLIAMS** by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this order through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this order, the balance due remains an obligation of **TERRY BRENT WILLIAMS**, and it is hereby **ORDERED** that **TERRY BRENT WILLIAMS** pay the balance due directly as specified below.

On this date the Court authorized the issuance of an Income Withholding for Support.

251

### Payment

**IT IS ORDERED** that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to **TRACY LEEANN WILLIAMS** for the support of the child. **IT IS ORDERED** that all payments shall be made payable to the Office of the Attorney General and include the ten-digit Office of the Attorney General case number (if available), the cause number of this suit, **TERRY BRENT WILLIAMS's** name as the name of the noncustodial parent (NCP), and **TRACY LEEANN WILLIAMS** name as the name of the custodial parent (CP). Payment options are found on the Office of the Attorney General's website at https://www.texasattorneygeneral.gov/cs/payment-options-and-types.

**IT IS ORDERED** that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

### Change of Employment

**IT IS FURTHER ORDERED** that **TERRY BRENT WILLIAMS** shall notify this Court and **TRACY LEEANN WILLIAMS** by U.S. certified mail, return receipt

26

135

82

requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of **TERRY BRENT WILLIAMS** and the name and address of his current employer, whenever that information becomes available.

### *Clerk's Duties*

**IT IS ORDERED** that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, **TRACY LEEANN WILLIAMS**, **TERRY BRENT WILLIAMS**, or an attorney representing **TRACY LEEANN WILLIAMS** or **TERRY BRENT WILLIAMS**, the clerk of this Court shall cause a certified copy of the Income Withholding for Support to be delivered to any employer.

### *Medical and Dental and Vision Support*

1.    **IT IS ORDERED** that **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** shall each provide additional child support for each child as set out in this order for as long as the Court may order **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day **TERRY**

**BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS'S** actual or potential obligation to support a child under sections 154.001 and 154.002 of the Family Code terminates, **IT IS ORDERED** that **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** are discharged from these obligations with respect to that child, except for any failure by a parent to fully comply with these obligations before that date.

2.      Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which **TERRY BRENT WILLIAMS** is responsible under a medical support order that does not exceed 9 percent of **TERRY BRENT WILLIAMS's** annual resources, as described by section 154.062(b) of the Texas Family Code.

"Dental insurance" means insurance coverage that provides preventive dental care and other dental services, including usual dentist services, office visits,

examinations, X-rays, and emergency services, that may be provided through a single service health maintenance organization or other private or public organization.

"Reasonable cost" of dental insurance means the total cost of dental insurance coverage for the child for which **TERRY BRENT WILLIAMS** is responsible under a medical support order that does not exceed 1.5 percent of **TERRY BRENT WILLIAMS's** annual resources, as described by section 154.062(b) of the Texas Family Code.

"Health-care expenses" include, without limitation, medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges but do not include expenses for travel to and from the provider or for nonprescription medication.

"Health-care expenses that are not reimbursed by insurance" ("unreimbursed expenses") include related copayments and deductibles.

3.  Findings on Availability of Health Insurance - Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the child through **TRACY**

24

85

**LEEANN WILLIAMS's** employment or membership in a union, trade association, or other organization at a reasonable cost of **$150.17 per month**. (Medical support only).

**IT IS FURTHER FOUND** that the following orders regarding health-care coverage are in the best interest of the child.

4.      Provision of Health-Care Coverage – (Medical Coverage only).

**TRACY LEEANN WILLIAMS** is **ORDERED** to maintain health insurance for the child as long as child support is payable for that child. **TRACY LEEANN WILLIAMS** is **ORDERED**-

a.      to provide to each conservator of the child the following information no later than the thirtieth day after the date the notice of the rendition of this order is received:

     i.      **TRACY LEEANN WILLIAMS's** Social Security number;

     ii.      the name and address of **TRACY LEEANN WILLIAMS's** employer;

     iii.      whether **TRACY LEEANN WILLIAMS's** employer is self-insured or has health insurance available;

     iv.      proof that health insurance has been provided for each child;

     v.      if **TRACY LEEANN WILLIAMS's** employer has health insurance

30

available:

    (a)    the name of the health insurance carrier;

    (b)    the number of the policy;

    (c)    a copy of the policy;

    (d)    a schedule of benefits;

    (e)    a health insurance membership card;

    (f)    claim forms, and

    (g)    any other information necessary to submit a claim; and

vi.    if **TRACY LEEANN WILLIAMS's** employer is self-insured:

    (a)    a copy of the schedule of benefits;

    (b)    a membership card;

    (c)    claim forms; and

    (d)    any other information necessary to submit a claim;

b.    to provide to each conservator of the child a copy of any renewals or changes to the health insurance coverage of a child and additional information regarding health insurance coverage of the child not later than the fifteenth day after **TRACY LEEANN WILLIAMS** receives or is provided with the renewal, change, or additional information;

c.    to notify each conservator of the child of any termination or lapse of

the health insurance coverage of a child no later than the fifteenth day after the date of the termination or lapse;

d.   after termination or lapse of health insurance coverage, to notify each conservator of the child of the availability to **TRACY LEEANN WILLIAMS** of additional health insurance for the child not later than the fifteenth day after the date the insurance becomes available;

e.   after termination or lapse of health insurance coverage, to enroll the child in a health insurance plan that is available to **TRACY LEEANN WILLIAMS** at reasonable cost at the next available enrollment period.

Pursuant to section 1504.051 of the Texas Insurance Code, **IT IS ORDERED** that if **TRACY LEEANN WILLIAMS** is eligible for dependent health coverage but fails to apply to obtain coverage for the child, the insurer shall enroll the child on application of **TERRY BRENT WILLIAMS** or others as authorized by law.

**IT IS ORDERED** that in addition to the $1,758.00 of child support per month, to be paid by Petitioner, **TERRY BRENT WILLIAMS**, Petitioner, **TERRY BRENT WILLIAMS** is **ORDERED** to reimburse Respondent, **TRACY LEEANN WILLIAMS**, the sum of **$150.17 per month for medical child support**, beginning **OCTOBER 1ST, 2024**.

5.   Findings on Availability of Dental Insurance – Having considered the

cost, accessibility, and quality of dental insurance coverage available to the parties, the Court finds:

**Dental and Vision insurance** is available or is in effect for the child through **TRACY LEEANN WILLIAM'S** employment or membership in a union, trade association, or other organization at a reasonable cost of **$26.37 per month**.

**IT IS FURTHER FOUND** that the following orders regarding dental and vision coverage are in the best interest of the children.

6.    Provision of Dental and Vision Coverage -

**TRACY LEEANN WILLIAMS** is **ORDERED** to maintain dental and vision insurance for each child as long as child support is payable for that child. **TRACY LEEANN WILLIAMS** is **ORDERED**-

a.    to provide to each conservator of the child the following information no later than the thirtieth day after the date the notice of the rendition of this order is received:

i.    **TRACY LEEANN WILLIAMS'S** Social Security number;

ii.    the name and address of **TRACY LEEANN WILLIAMS'S** employer;

iii.    whether **TRACY LEEANN WILLIAMS'S** employer is self-insured or has dental or vision insurance available;

iv.    proof that dental and vision insurance has been provided for each child;

v.    if **TRACY LEEANN WILLIAMS'S** employer has dental and vision insurance available:

    (a)    the name of the dental and vision insurance carrier;

    (b)    the number of the policy;

    (c)    a copy of the policy;

    (d)    a schedule of benefits;

    (e)    a dental insurance membership card;

    (f)    claim forms, and

    (g)    any other information necessary to submit a claim; and

vi.    if **TRACY LEEANN WILLIAMS'S** employer is self-insured:

    (a)    a copy of the schedule of benefits;

    (b)    a membership card;

    (c)    claim forms; and

    (d)    any other information necessary to submit a claim;

b    to provide to each conservator of the child a copy of any renewals or changes to the dental and vision insurance coverage of a child and additional information regarding dental and vision insurance coverage

14

of the child not later than the fifteenth day after **TRACY LEEANN WILLIAMS** receives or is provided with the renewal, change, or additional information;

c. to notify each conservator of the child of any termination or lapse of the dental and vision insurance coverage of a child no later than the fifteenth day after the date of the termination or lapse;

d. after termination or lapse of dental and vision insurance coverage, to notify each conservator of the child of the availability to **TRACY LEEANN WILLIAMS** of additional dental and vision insurance for the child not later than the fifteenth day after the date the insurance becomes available;

e. after termination or lapse of dental and vision insurance coverage, to enroll the child in a dental and vision insurance plan that is available to **TRACY LEEANN WILLIAMS** at reasonable cost at the next available enrollment period.

Pursuant to section 1504.051 of the Texas Insurance Code, **IT IS ORDERED** that if **TRACY LEEANN WILLIAMS** is eligible for dependent dental and vision coverage but fails to apply to obtain coverage for the child, the insurer shall enroll the children on application of **TERRY BRENT WILLIAMS** or others as authorized by

35

144

91

law.

**IT IS ORDERED** that in addition to the $1,758.00 of child support per month, to be paid by Petitioner, **TERRY BRENT WILLIAMS**, Petitioner, **TERRY BRENT WILLIAMS** is **ORDERED** to reimburse Respondent, **TRACY LEEANN WILLIAMS**, the sum of **$26.37 per month for dental and vision support**, beginning **OCTOBER 1ST, 2024**.

7.     Allocation of Unreimbursed Expenses -

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance are allocated as follows:

**TERRY BRENT WILLIAMS** is **ORDERED** to pay 50 percent and **TRACY LEEANN WILLIAMS** is **ORDERED** to pay 50 percent of the unreimbursed health-care expenses other than dental expenses if, at the time the expenses are incurred, **TRACY LEEANN WILLIAMS** is providing health insurance as ordered.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary dental expenses of the children that are not reimbursed by dental insurance are allocated as follows:

**TERRY BRENT WILLIAMS** is **ORDERED** to pay 50 percent and **TRACY LEEANN WILLIAMS** is **ORDERED** to pay 50 percent of the unreimbursed dental

expenses if, at the time the expenses are incurred, **TRACY LEEANN WILLIAMS** is providing dental and vision insurance as ordered.

The conservator who incurs a health-care expense on behalf of a child is **ORDERED** to provide to the other conservator receipts, bills, statements, or explanations of benefits showing the uninsured portion of the health-care expenses within thirty days after the incurring conservator receives them. The nonincurring conservator is **ORDERED** to pay the non-incurring conservator's percentage of the unreimbursed portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring conservator for any advance payment exceeding the incurring conservator's percentage of the unreimbursed portion of the health-care expenses within thirty days after the nonincurring conservator receives receipts, bills, statements, or explanations of benefits showing the unreimbursed portion of the health-care expense.

For the Court to hold the nonincurring conservator in civil or criminal contempt for failing to pay the nonincurring conservator's percentage of the unreimbursed portion of a health-care expense, the incurring conservator must prove beyond a reasonable doubt that the nonincurring conservator personally received receipts, bills, statements, or explanations of benefits reflecting the unreimbursed portion of the health-care expense no later than thirty days after the

incurring conservator received them. Even if the incurring conservator fails to meet that burden of proof, the Court may award the incurring conservator a judgment in the nature of child support against the nonincurring conservator in the amount of the unreimbursed portion of the heath-care expense the nonincurring conservator was ordered but fail to pay.

8. Secondary Coverage - **IT IS ORDERED** that if a conservator provides secondary health insurance coverage or dental insurance coverage for the children, the conservators shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the conservator who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

9. Compliance with Insurance Company Requirements - Each conservator is **ORDERED** to conform to all requirements imposed by the terms and conditions of any policy of health or dental insurance covering the children in order to assure the maximum reimbursement or direct payment by any insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each conservator is **ORDERED** to use "preferred providers," or services within the health maintenance organization or

38

147

94

preferred provider network, if applicable. Disallowance of the bill by an insurance company shall not excuse the obligation of a conservator to make payment. Excepting emergency health-care expenses incurred on behalf of the child, if a party incurs health-care expenses for the child using "out-of-network" health-care providers or services, or fails to follow the insurance company procedures or requirements, that conservator shall pay all such health-care expenses incurred absent (1) written agreement of the conservators allocating such health-care expenses or (2) further order of the Court.

10.    Claims - Except as provided in this paragraph, a conservator who is not carrying the health or dental insurance policy covering the child is **ORDERED** to provide to the party carrying the policy, within fifteen days of receiving them, all forms, receipts, bills, and statements reflecting the health-care expenses the conservator not carrying the policy incurs on behalf of the children. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, **IT IS ORDERED** that the conservator who is not carrying the health or dental or vision insurance policy covering the children, at that conservator's option, or others as authorized by law, may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the child and receive payments directly from the insurance company. Further, for the sole purpose of

section 1204.251 of the Texas Insurance Code, **TRACY LEEANN WILLIAMS** is designated as the joint managing conservator of the child for insurance purposes.

The conservator who is carrying the health or dental or vision insurance policy covering the child is **ORDERED** to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either conservator on behalf of a child to the insurance carrier within fifteen days of that conservator's receiving any form, receipt, bill, or statement reflecting the expenses.

11. Constructive Trust for Payments Received   **IT IS ORDERED** that any insurance payments received by a conservator from the health or dental or vision insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the conservator who paid those expenses. **IT IS FURTHER ORDERED** that the conservator receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other conservator, and the conservator carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other conservator within three days of receiving them.

12. **WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR DENTAL OR VISIOAN INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE**

OR DENTAL INSURANCE OR VISION INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILD, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE OR DENTAL INSURANCE OR VISION INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS, DENTAL INSURANCE PREMIUMS, VISION INSURANCE PREMIUMS, OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILD.

## *Support as Obligation of Estate*

**IT IS ORDERED** that the provisions for child support in this decree shall be an obligation of the estate of **TERRY BRENT WILLIAMS** and shall not terminate on the death of **TERRY BRENT WILLIAMS.** **IT IS ORDERED** that payment received by **TRACY LEEANN WILLIAMS** for the benefit of the child due to the death of **TERRY BRENT WILLIAMS,** including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of **TERRY BRENT WILLIAMS'S** estate.

## *Termination of Orders on Remarriage of Parties but Not on Death of Obligee*

The provisions of this decree relating to current child support terminate on

41

97

the remarriage of **TERRY BRENT WILLIAMS** to **TRACY LEEANN WILLIAMS** unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of **TERRY BRENT WILLIAMS** but continues as an obligation to **TRACY LEEANN WILLIAMS** for the benefit of ▄▄▄▄▄▄▄▄▄▄.

## *Optimizing Development of Relationship between Parties and Children*

**IT IS ORDERED** that the parties shall make every effort to foster the respect, love and affection of the child for the other parent. Each party shall do nothing that would in any way estrange the child from the other parent, that would hamper the free and natural continuation of the love and affection of the child for the other parent, or that would injure the opinion of the child for the other parent, and neither shall do anything to undermine the child's love, affection and respect for the other parent. This specifically includes that the parties will refrain from punishing the child in any way for expressing love, affection or respect for the other parent or for wishing to communicate with the other parent or for expressing sadness upon separation from the other parent.

## *Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas

42

Family Code is as follows:

Name: **TERRY BRENT WILLIAMS**

Social Security number:     XXX-XX-X147

Driver's license number:     XXXX_____     Issuing state:     Texas

Current residence address: _____

Mailing address: _____

Email address: terrybwilliams@yahoo.com

Home telephone number:  (903) 466-1334

Name of employer:     _____

Address of employment:     _____

Work telephone number:     _____


Name: **TRACY LEEANN WILLIAMS**

Social Security number:     XXX-XX-X448

Driver's license number     XXXXX543     Issuing state:     Texas

Current residence address:  1817 East Railroad St., Buffalo, Texas 75831

Mailing address: P. O. Box 876, Buffalo, Texas 75831

Email address: twilliams@freestonemc.com

Home telephone number:  (903) 391-4636

Name of employer:     Fairfield Hospital District

Address of employment:     125 Newman Street, Fairfield, Texas 75840

Work telephone number:  (903) 389-2121


_**Required Notices**_

**EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO**

43 |

152

99

NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, EMAIL ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING

44

CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 139 E Main, Centerville, Texas 75833. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS

FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

THE COURT MAY MODIFY THIS ORDER THAT PROVIDES FOR THE SUPPORT OF A CHILD, IF:

(1)    THE CIRCUMSTANCES OF THE CHILD OR A PERSON AFFECTED BY THE ORDER HAVE MATERIALLY AND SUBSTANTIALLY CHANGED; OR

(2)    IT HAS BEEN THREE YEARS SINCE THE ORDER WAS RENDERED OR LAST MODIFIED AND THE MONTHLY AMOUNT OF THE CHILD SUPPORT AWARD UNDER THE ORDER DIFFERS BY EITHER 20 PERCENT OR $100 FROM THE AMOUNT THAT WOULD BE AWARDED IN ACCORDANCE WITH THE CHILD SUPPORT GUIDELINES.

## Warnings to Parties

WARNINGS TO PARTIES:  FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

**FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.**

**FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.**

### Division of Marital Estate

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the child of the marriage.

### Property of Child

**IT IS ORDERED** that the Edward Jones Custodian Account (account number xxx-xxx10-1-4) of ███████████████ ' shall remain property of the child, ███████████████. **IT IS ORDERED** that any withdrawals from this account shall require signatures and consent of both parents, **TERRY BRENT WILLIAMS** and **TRACY LEEANN WILLIAMS** before any funds are removed from this account.

## *Property to Petitioner*

**IT IS ORDERED AND DECREED** that Petitioner, **TERRY BRENT WILLIAMS,** is awarded the following as his sole and separate property, and Respondent, **TRACY LEEANN WILLIAMS,** is divested of all right, title, interest, and claim in and to that property:

P-1. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of Petitioner or subject to his sole control.

P-2. All clothing, jewelry, and other personal effects in the possession of Petitioner or subject to his sole control.

P-3. All sums of cash in the possession of Petitioner or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in Petitioner's sole name or from which Petitioner has the sole right to withdraw funds or which are subject to Petitioner's sole control.

P-4. All individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in Petitioner's name.

P-5. All policies of life insurance (including cash values) insuring

Petitioner's life.

P-6. The _____ motor vehicle, vehicle identification number _____, together with all prepaid insurance, keys, and title documents.

P-7. All other property in the possession of Petitioner, **TERRY BRENT WILLIAMS**.

### *Property to Respondent*

**IT IS ORDERED AND DECREED** that Respondent, **TRACY LEEANN WILLIAMS** is awarded the following as her sole and separate property, and Petitioner, **TERRY BRENT WILLIAMS**, is divested of all right, title, interest, and claim in and to that property:

R-1. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of Respondent or subject to her sole control.

R-2. All clothing, jewelry, and other personal effects in the possession of Respondent or subject to her sole control.

R-3. All sums of cash in the possession of Respondent or subject to his sole control, including funds on deposit, together with accrued but unpaid

interest, in banks, savings institutions, or other financial institutions, which accounts stand in Respondent's sole name or from which Respondent has the sole right to withdraw funds or which are subject to Respondent's sole control.

R-4. All individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in Respondent's name.

R-5. All policies of life insurance (including cash values) insuring Respondent's life.

R-6. The **2024 Cadillac XT4** motor vehicle, vehicle identification number **1GYFZCR44RF100842**, together with all prepaid insurance, keys, and title documents.

R-7. All other property in the possession of Respondent, **TRACY LEEANN WILLIAMS**.

## *Division of Debt*

### *Debts to Petitioner*

**IT IS ORDERED AND DECREED** that Petitioner, **TERRY BRENT WILLIAMS**, shall timely pay, as a part of the division of the estate of the parties, and shall indemnify and hold Respondent, **TRACY LEEANN WILLIAMS**, and her property harmless from any failure to so discharge, these items:

P-1.  All debts, charges, liabilities, and other obligations incurred solely by Petitioner from and after March 3rd, 2022, unless express provision is made in this decree to the contrary.

P-2.  The balance due, including principal, interest, and all other charges, on the promissory note payable to _____ and given as part of the purchase price of and secured by a lien on the _____ motor vehicle awarded to Petitioner, **TERRY BRENT WILLIAMS**.

### Debts to Respondent

**IT IS ORDERED AND DECREED** that Respondent, **TRACY LEEANN WILLIAMS**, shall timely pay, as a part of the division of the estate of the parties, and shall indemnify and hold Petitioner, **TERRY BRENT WILLIAMS**, and his property harmless from any failure to so discharge, these items:

R-1.  All debts, charges, liabilities, and other obligations incurred solely by Respondent from and after March 3rd, 2022, unless express provision is made in this decree to the contrary.

R-2.  The balance due, including principal, interest, and all other charges, on the promissory note payable to **Santander Finance** and given as part of the purchase price of and secured by a lien on the **2024 Cadillac XT4** motor vehicle

awarded to Respondent, **TRACY LEEANN WILLIAMS**.

## _Division of Personal Property Sale Proceeds_

The Court hereby **ORDERS AND DECREES** that the sale proceeds from the sale of the personal property of the parties shall be divided as follows:

The Court finds that both Petitioner, **TERRY BRENT WILLIAMS** and Respondent, **TRACY LEEANN WILLIAMS** were **ORDERED** to deliver the following items to **HUNTER M. WARREN**, the Court Appointed Receiver, all of the personal properties belonging to the parties following the Court's hearing on December 6th, 2024.

The Court finds that Petitioner, **TERRY BRENT WILLIAMS** directly interfered with the Court's Order and did not deliver all of the property items as follows:

1. **JOHN DEERE SKID STEER**- Petitioner, **TERRY BRENT WILLIAMS** removed the Front Bucket attachment **($1,000.00)**, Pallet Forks **($1,000.00)**, and the Hydraulic Grapple. **($2,500.00)**. **($4,500.00)** in value.

2. **15FT BATWING SHREDDER AND KUBOTA CAB**- Petitioner, **TERRY BRENT WILLIAMS** removed the Front-End Loader **($3,000.00)**. Due to

the front-end loader being removed, the hydraulics on the batwing do not work because the hydraulics are dumping back into the tractor and need **($1,000.00)** in repairs due to Petitioner's interference with this tractor. **($4,000.00)** in value.

3. **DODGE 3500 SINGLE CAB WELDING TRUCK**- Petitioner, **TERRY BRENT WILLIAMS** delivered the welding truck with a blown-out tire and the other tires are in poor condition. Petitioner, **TERRY BRENT WILLIAMS** failed to provide grounding leads with matching reels, oxygen, acetylene bottles, gauges, and another reel for the cutting torch. **($1,000.00)** worth of missing items. **($1,000.00)** in value.

4. **2002 DODGE RAM 3500**- Petitioner, **TERRY BRENT WILLIAMS** failed to deliver this vehicle, and claims this vehicle was used as a parts truck. **($1,000.00)** in value.

5. **1998 DODGE 3500** Petitioner, **TERRY BRENT WILLIAMS** delivered this vehicle with missing rear dual wheels and tires. The doors have holes in them. The passenger door has damage causing the door not to close. The paint is coming off of the exterior and the top of the cab is rusting. The interior of the truck is in poor condition, the dash is 85%

53

gone, and the frame is falling apart. **($1,500.00)** in missing or damaged parts. **($1,500.00)** in value.

6. **SHOP DOOR**- Petitioner, **TERRY BRENT WILLIAMS** failed to deliver this item. The shop door was taken to his mother's house. **($800.00)** in value.

**TOTAL INTERFERENCE WITH PERSONAL PROPERTY AMOUNT $12,800.00**

The Court hereby **ORDERS** that from Petitioner, **TERRY BRENT WILLIAMS'** portion of the personal property sale proceeds shall be deducted in the following amounts as follows:

**$22,523.50**

1. **Amount of interference with personal property delivered to Hunter M. Warren. ................... $12,800.00**

2. **One half (1/2) of** ▮▮▮▮▮▮▮▮▮ **Orthodontic braces paid by Respondent TRACY LEEANN WILLIAMS. ............................................. $2,626.00**

3. **Purchase of Respondent TRACY LEEANN WILLIAMS' one half (1/2) ownership of the 34FT Keystone Camper. ............................................................. $2,750.00**

4. **Reimbursement to Respondent TRACY LEEANN WILLIAMS for the lien on the Scag Freedom Z mower paid by Respondent TRACY LEEANN WILLIAMS. ........................................ $1,100.00**

Of the total $45,047.00 (after Receivers Fee of 10% paid to Hunter M. Warren) of the personal property, the Court divides the personal property proceeds as follows:

Petitioner, **TERRY BRENT WILLIAMS** shall be paid **$3,247.50**.

Respondent, **TRACY LEEANN WILLIAMS** shall be paid **$41,799.50**.

It is **ORDERED AND DECREED** that the Leon County District Clerk shall issue checks in the following amount of the remaining proceeds from the sale of personal property as follows:

**TERRY BRENT WILLIAMS** .............................................................. **$3,247.50**

**TRACY LEEANN WILLIAMS** ............................................................**$41,799.50**

**TOTAL** ........................................................................................ **$45,047.00**

### *Division of Real Property Sale Proceeds*

The Court finds that the Real Property located at **44.0250 AC, A. SMITH SURVEY, A-834 & D. DAVIS SURVEY, A-248, LEON COUNTY, TX** was sold on or about March 14th, 2025, resulting in net sale proceeds of **$385,935.33** to be divided between the parties. The Court finds that the sum of **$385,935.33** is currently held in the registry of the Court.

Petitioner, **TERRY BRENT WILLIAMS** is awarded **$20,000.00** from the sale proceeds for reimbursement of the amount agreed as the property value of the

separate property tract that Petitioner, **TERRY BRENT WILLIAMS** purchased prior to marriage, which is part of the 44.0250 acre tract, the tract that the parties purchased a community property single wide trailer after marriage, leaving **$365,935.33** to be divided by the parties.

The Court further finds that the net sale proceeds of **$365,935.33** should be divided between the parties 50/50, **subject to the following Orders**.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that **TRACY LEEANN WILLIAMS** is awarded the sum of **$182,967.66**, from the net sale proceeds.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that **TERRY BRENT WILLIAMS** is awarded the remainder of the sum of **$163,341.92** after the District Clerk of Leon County, Texas makes the following disbursements from **TERRY BRENT WILLIAMS'** portion of the net sale proceeds from the sale of the 44.0250 acre tract of land:

(1) **$8,018.50** is reasonable and necessary attorney fees payable to **JOHN R. BANKHEAD** for representation of **TRACY LEEANN WILLIAMS**; and

(2) **$11,607.24** to **TRACY LEEANN WILLIAMS** for back child support, Medical, Dental, and Vision support previously ordered in this cause and

unpaid by **TERRY BRENT WILLIAMS** from October 1st, 2024, through March 1st, 2025.

The **DISTRICT CLERK OF LEON COUNTY, TEXAS** is **THEREFORE ORDERED** to make the following disbursements from the sum of **$385,935.33** held in the Registry of the Court from the Net Sale Proceeds from the sale of the parties Real Property:

(1) **$182,967.66 to TRACY LEEANN WILLIAMS**

(2) **$8,018.50 to JOHN R. BANKHEAD**

(3) **$11,607.24 to TRACY LEEANN WILLIAMS**

(4) **$163,341.92 to TERRY BRENT WILLIAMS**

(5) **$20,000.00 to TERRY BRENT WILLIAMS**

### *Permanent Injunctions as to TERRY BRENT WILLIAMS for the protection of TRACY LEEANN* ███████████████████

The Court finds that, because of the conduct of **TERRY BRENT WILLIAMS**, a permanent injunction against him should be granted as appropriate relief because there is no adequate remedy at law.

The permanent injunction granted below shall be effective immediately and shall be binding on **TERRY BRENT WILLIAMS**; on his agents, servants, employees, and attorneys; and on those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise.

**IT IS ORDERED AND DECREED** that **TERRY BRENT WILLIAMS** is permanently enjoined from:

1.      Communicating with Respondent, **TRACY LEEANN WILLIAMS** in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, in vulgar, profane, obscene, or indecent language or in a coarse or offensive manner.

2.      Threatening Respondent, **TRACY LEEANN WILLIAMS** in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, to take unlawful action against any person.

3.      Placing one or more telephone calls, anonymously, at any unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication.

4.      Causing bodily injury to Respondent, **TRACY LEEANN WILLIAMS** or to the child ███████████████.

5.      Threatening Respondent, **TRACY LEEANN WILLIAMS** or the child ████████ ████████ with imminent bodily injury.

6.      Destroying, removing, concealing, encumbering, transferring, or

otherwise harming or reducing the value of the property Respondent, **TRACY LEEANN WILLIAMS** and/or the child ███████ ██ ████████.

7.     Opening or diverting mail or email or any other electronic communication addressed to Respondent, **TRACY LEEANN WILLIAMS** and/or the child ████████████████.

8.     Signing or endorsing Respondent, **TRACY LEEANN WILLIAMS** name on any negotiable instrument, check, or draft, including a tax refund, insurance payment, and dividend, or attempting to negotiate any negotiable instrument payable to Respondent, **TRACY LEEANN WILLIAMS** without the personal signature of Respondent, **TRACY LEEANN WILLIAMS**.

9.     Destroying, disposing of, or altering any financial records of the parties, including but not limited to a canceled check, deposit slip, and other records from a financial institution, a record of credit purchases or cash advances, a tax return, and a financial statement.

10.    Using any password or personal identification number to gain access to Respondent, **TRACY LEEANN WILLIAMS** email account, bank account, social media account, or any other electronic account.

11.    Entering, operating, or exercising control over the 2024 Cadillac XT4

59

115

or any motor vehicle in the possession of Petitioner.

12. Tracking or monitoring personal property or a motor vehicle in the possession of Respondent, **TRACY LEEANN WILLIAMS-**

a. using a tracking application on a personal electronic device in the possession of that party or using a tracking device; or

b. physically following that party or causing another to physically follow that party.

13. Disturbing the peace of the child or of another party.

14. Withdrawing the child from enrollment in the school where the child is presently enrolled.

15. Hiding or secreting the child from Respondent, **TRACY LEEANN WILLIAMS**.

16. Making disparaging remarks regarding Respondent, **TRACY LEEANN WILLIAMS** in the presence or within the hearing of the child.

## *Notice*

**IT IS ORDERED AND DECREED** that each party shall send to the other party by email to the other party's last known email address or by text message to the other party's last known mobile telephone number, within three days of its

116

receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

### *Attorney's Fees*

The Court has entered Orders for payment of Attorney Fees herein to effect an equitable division for the estate of the parties and has found that Petitioner, **TERRY BRENT WILLIAMS** has disobeyed the Court's Orders and has directly and intentionally interfered with the specific Orders of this Court regarding the sale of the parties properties and based upon Petitioner, **TERRY BRENT WILLIAMS'** conduct he has not followed the Court's specific instructions and orders, and has prolonged this matter and should therefore be **ORDERED** to pay Respondent, **TRACY LEEANN WILLIAMS'** attorney fees payable to **JOHN R. BANKHEAD** in the amount of **$8,018.50** out of Petitioner, **TERRY BRENT WILLIAMS'** portion of the Real Property Sale proceeds, as ordered herein above.

### *Liability for Federal Income Taxes for Prior Years (2011 through 2025)*

**IT IS ORDERED AND DECREED** that **TERRY BRENT WILLIAMS** shall be individually responsible for all of his individual federal income tax liabilities contributable to his personal earnings for the period from tax years 2011 through December 31st, 2025, and **TERRY BRENT WILLIAMS** shall timely pay 100 percent

of any taxes, penalties, and interest due on his earnings for those years. **IT IS ORDERED** that **100%** of **TERRY BRENT WILLIAMS'S** withholding taxes, losses, and deductions shall be claimed by **TERRY BRENT WILLIAMS**.

**IT IS ORDERED AND DECREED** that **TRACY LEEANN WILLIAMS** shall be individually responsible for all of her individual federal income tax liabilities contributable to her personal earnings for the period from tax years 2011 through December 31st, 2025, and **TRACY LEEANN WILLIAMS** shall timely pay 100 percent of any taxes, penalties, and interest due on her earnings for those years. **IT IS ORDERED** that **100%** of **TRACY LEEANN WILLIAMS'S** withholding taxes, losses, and deductions shall be claimed by **TRACY LEEANN WILLIAMS**.

**IT IS ORDERED AND DECREED** that the parties shall cooperate with each other and exchange all relevant information, notices, and documents in the event of an audit or examination (or notice thereof) of their income tax returns for any period during their marriage through the date of divorce by the Internal Revenue Service or other governmental agency, and each party shall have the right to participate, at that participant party's cost and expense, in that audit or examination individually or by that party's designated representative.

### Court Costs

**IT IS ORDERED AND DECREED** that costs of court are to be borne by the party who incurred them.

### Discharge from Discovery Retention Requirement

**IT IS ORDERED AND DECREED** that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

### Decree Acknowledgment

Petitioner, **TERRY BRENT WILLIAMS**, and Respondent, **TRACY LEEANN WILLIAMS**, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

63

## _Indemnification_

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and **IT IS ORDERED** that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at that other party's sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

**IT IS ORDERED** that the indemnifying party will reimburse the indemnified

party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and **IT IS ORDERED** that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree. The parties agree and **IT IS ORDERED** that each party shall send this written notice to the other party by email to the other party's last known email address or by text to the other party's last known mobile telephone number within three days of the party's being notified of the threatened or instituted litigation.

## *Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

## Relief Not Granted

**IT IS ORDERED AND DECREED** that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

*Date of Judgment*

SIGNED on ___18 MARCH 2025___.

_____
**JUDGE PRESIDING**

**APPROVED AS TO FORM ONLY:**

FILED
CASSANDRA NOEY WILSON, DISTRICT CLERK
LEON COUNTY, TEXAS

MAR 18 2025

BY _Carol Johnson_

_____
**JEFFREY L. COE**
P. O. Box 1157
Palestine, Texas 75802
Tel: (903) 723-0331
State Bar No. 24001902
Jeff@coelawfirm.com
Attorney for Petitioner
**TERRY BRENT WILLIAMS**

_[signature]_

**JOHN R BANKHEAD**
P.O. BOX 1839
MADISONVILLE, TX 77864
Tel: (936) 348-3400
Fax: (936) 348-9046
Attorney for Petitioner
**TRACY LEEANN WILLIAMS**
State Bar No. 01676600
secretary@bankheadlaw.net

**APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:**

_____

**TERRY BRENT WILLIAMS**, Petitioner

_[signature]_

**TRACY LEEANN WILLIAMS**, Respondent

mmm fam 15245 FINAL DECREE OF DIVORCE

FILED
CASSANDRA NOEY WILSON, DISTRICT CLERK
LEON COUNTY, TEXAS

APR 21 2025

BY _A. Ackley_

No. 22-00059CV

| | |
|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF<br>TERRY BRENT WILLIAMS<br>AND<br>TRACY LEEANN WILLIAMS<br><br>AND IN THE INTEREST OF<br>████ ███ ███████, A CHILD | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

IN THE 369TH DISTRICT COURT

OF

LEON COUNTY, TEXAS

## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

On March 18, 2025 the Court signed the final decree of divorce in this case. Terry Brent Williams filed a request for findings of fact and conclusions of law on March 24, 2025. The Court makes the following findings of fact and conclusions of law pursuant to Rule of Civil Procedure 297.

### Findings of Fact

1. Terry Brent Williams and Tracy Leeann Williams were married September 10, 2011.

2. Terry Brent Williams and Tracy Leeann Williams are the parents of ████████ ████████

3. Terry Brent Williams filed the petition for divorce in this proceeding.

4. At the time the suit was filed, the parties had been domiciled in Texas for the preceding six months and residents of Leon County for the preceding 90 days.

5. The marriage of the parties had become insupportable due to discord or conflict of personalities that destroyed the legitimate ends of the marital relationship.

6. There is no reasonable expectation of reconciliation.

7. It is in the best interest of ██████████████ that the parties be named joint managing conservators.

1

198

124

8. It is in the best interest of ███████████ that Tracy Leeann Williams have the exclusive right to designate the primary residence of ███████████ within Leon County or contiguous counties.

9. It is in the best interest of ███████████ that conservatorship and access be governed by a standard possession order.

10. The monthly net resources of Terry Brent Williams are $8,790.60.

11. Application of the Child Support Guidelines of the Texas Family Code of 20 percent supports the Court's award of child support in the amount of $1,758.00 per month beginning October 1, 2024.

12. Health insurance is available for Presley Rae Williams through the employment of Tracy Leeann Williams.

13. It is in the best interest of ███████████ that Tracy Leeann Williams provide health insurance through her employment and that Terry Brent Williams pay medical support in the amount of $150.17 per month beginning October 1, 2024.

14. To effect a just and right division of the marital estate, the Court ordered the sale of personal property by a court appointed receiver.

15. Terry Brent Williams interfered with the court's order by failing to deliver the following items to the receiver:
    a. John Deere skid steer.
    b. 15ft batwing shredder and Kubota cab
    c. Dodge 3500 single cab welding truck.
    d. 2002 Dodge Ram 3500
    e. 1998 Dodge 3500
    f. Shop Door.

16. Terry Brent Williams' interference reduced the value of the personal property subject to sale in the amount of $12,800.00.

17. The proceeds of the sale of personal property were $45,047.00.

18. To effect a just and right division of the proceeds from the sale of personal property the Court ordered the following deductions from the portion disbursed to Terry Brent Williams:
    a. $12,800.00 for interference with the sale of personal property.

2

b. $2,626.00 to reimburse Tracy Leeann Williams for ½ the cost of orthodontic braces for ███ ██████████.

c. $2,750.00 for the interest of Tracy Leeann Williams in the 34ft Keystone Camper.

d. $1,100.00 to reimburse Tracy Leeann Williams

19. To effect a just and right division of the marital estate, the Court ordered the sale of real property.

20. The proceeds of the sale of real property were $385,835.33

21. The real property sold included a portion owned as Terry Brent Williams' separate property. Terry Brent Williams agreed the value of the separate property was $20,000.00.

22. The Court awarded $20,000.00 of the sale proceeds to Terry Brent Williams to reimburse his separate property interest.

23. The remaining proceeds of $365,935.33, were divided equally between the parties.

24. The disbursement to Terry Brent Williams was subject to 1) the award of $8,018.50 in attorney's fees for representation of Tracy Leeann Williams and 2) $11,607.24 in back child support for the period from October 1, 2024 through March 1, 2025.

25. Tracy Leeann Williams incurred reasonable and necessary attorney's fees in the amount of $8,018.50 in defending this proceeding.

### Conclusions of Law

1. The petition for divorce contains the allegations required by law.

2. The Court has jurisdiction over the parties, the subject matter of the suit, including the minor child of the parties.

3. The evidence established each of the requirements to entitle the parties to divorce on the ground of insupportablity.

4. No characterization and valuation of individual assets and liabilities is required in the absence of a request under Section 6.711 of the Family Code.

3

5.  No findings of the obligee parent's net resources are required in the absence of a request under section 154.130 of the Family Code.

6.  No findings of fact are required under section 153.258 of the Family Code when there has been no variance from a standard possession order.

Signed on the __21 st__ day of April 2025.

_____
C. Michael Davis
Judge Presiding

**FILED**
CASSANDRA NOEY WILSON, DISTRICT CLERK
LEON COUNTY, TEXAS

APR 2 1 2025

BY _Amy Ackley_

4

Vernon's Texas Statutes and Codes Annotated
　Civil Practice and Remedies Code (Refs & Annos)
　　Title 7. Alternate Methods of Dispute Resolution (Refs & Annos)
　　　Chapter 154. Alternative Dispute Resolution Procedures (Refs & Annos)
　　　　Subchapter A. General Provisions

V.T.C.A., Civil Practice & Remedies Code § 154.002

§ 154.002. Policy

Currentness

It is the policy of this state to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures.

**Credits**
Added by Acts 1987, 70th Leg., ch. 1121, § 1, eff. June 20, 1987.

V. T. C. A., Civil Practice & Remedies Code § 154.002, TX CIV PRAC & REM § 154.002
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 1. The Marriage Relationship (Refs & Annos)
      Subtitle B. Property Rights and Liabilities
        Chapter 3. Marital Property Rights and Liabilities (Refs & Annos)
          Subchapter A. General Rules for Separate and Community Property (Refs & Annos)

V.T.C.A., Family Code § 3.001

§ 3.001. Separate Property

Currentness

A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

**Credits**
Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

V. T. C. A., Family Code § 3.001, TX FAMILY § 3.001
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 1. The Marriage Relationship (Refs & Annos)
      Subtitle B. Property Rights and Liabilities
        Chapter 3. Marital Property Rights and Liabilities (Refs & Annos)
          Subchapter A. General Rules for Separate and Community Property (Refs & Annos)

V.T.C.A., Family Code § 3.002

§ 3.002. Community Property

Currentness

Community property consists of the property, other than separate property, acquired by either spouse during marriage.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

V. T. C. A., Family Code § 3.002, TX FAMILY § 3.002

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 1. The Marriage Relationship (Refs & Annos)
      Subtitle C. Dissolution of Marriage
        Chapter 7. Award of Marital Property

V.T.C.A., Family Code § 7.001

§ 7.001. General Rule of Property Division

Currentness

In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

**Credits**
Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

V. T. C. A., Family Code § 7.001, TX FAMILY § 7.001
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**　　　　　　　　　　　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Family Code (Refs & Annos)
        Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
            Subtitle B. Suits Affecting the Parent-Child Relationship
                Chapter 154. Child Support (Refs & Annos)
                    Subchapter C. Child Support Guidelines (Refs & Annos)

V.T.C.A., Family Code § 154.123

§ 154.123. Additional Factors for Court to Consider

Currentness

(a) The court may order periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines.

(b) In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors, including:

(1) the age and needs of the child;

(2) the ability of the parents to contribute to the support of the child;

(3) any financial resources available for the support of the child;

(4) the amount of time of possession of and access to a child;

(5) the amount of the obligee's net resources, including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed and including an increase or decrease in the income of the obligee or income that may be attributed to the property and assets of the obligee;

(6) child care expenses incurred by either party in order to maintain gainful employment;

(7) whether either party has the managing conservatorship or actual physical custody of another child;

(8) the amount of alimony or spousal maintenance actually and currently being paid or received by a party;

(9) the expenses for a son or daughter for education beyond secondary school;

(10) whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity;

(11) the amount of other deductions from the wage or salary income and from other compensation for personal services of the parties;

(12) provision for health care insurance and payment of uninsured medical expenses;

(13) special or extraordinary educational, health care, or other expenses of the parties or of the child;

(14) the cost of travel in order to exercise possession of and access to a child;

(15) positive or negative cash flow from any real and personal property and assets, including a business and investments;

(16) debts or debt service assumed by either party; and

(17) any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.

**Credits**
Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995.

V. T. C. A., Family Code § 154.123, TX FAMILY § 154.123
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
      Subtitle B. Suits Affecting the Parent-Child Relationship
        Chapter 154. Child Support (Refs & Annos)
          Subchapter C. Child Support Guidelines (Refs & Annos)

V.T.C.A., Family Code § 154.125

§ 154.125. Application of Guidelines to Net Resources

Currentness

(a) The guidelines for the support of a child in this section are specifically designed to apply to situations in which the obligor's monthly net resources are not greater than the maximum amount of net resources to which the statutory guidelines are applicable, as most recently published by the Title IV-D agency in the Texas Register.

(a-1) The amount prescribed by Subsection (a) is adjusted every six years as necessary to reflect inflation. The Title IV-D agency shall compute the adjusted amount, to take effect beginning September 1 of the year of the adjustment, based on the percentage change in the consumer price index during the 72-month period preceding March 1 of the year of the adjustment, as rounded to the nearest $50 increment. The Title IV-D agency shall publish the adjusted amount in the Texas Register before September 1 of the year in which the adjustment takes effect. For purposes of this subsection, "consumer price index" has the meaning assigned by Section 341.201, Finance Code.

(b) If the obligor's monthly net resources are not greater than the amount described by Subsection (a) and the obligor's monthly net resources are equal to or greater than the amount described by Subsection (c), the court shall presumptively apply the following schedule in rendering the child support order:

CHILD SUPPORT GUIDELINES

BASED ON THE MONTHLY NET RESOURCES OF THE OBLIGOR

| | |
|---|---|
| 1 child | 20% of Obligor's Net Resources |
| 2 children | 25% of Obligor's Net Resources |
| 3 children | 30% of Obligor's Net Resources |
| 4 children | 35% of Obligor's Net Resources |
| 5 children | 40% of Obligor's Net Resources |
| 6+ children | Not less than the amount for 5 children |

(c) If the obligor's monthly net resources are less than $1,000, the court shall presumptively apply the following schedule in rendering the child support order:

LOW-INCOME CHILD SUPPORT GUIDELINES

BASED ON THE MONTHLY NET RESOURCES OF THE OBLIGOR

| | |
|---|---|
| 1 child | 15% of Obligor's Net Resources |
| 2 children | 20% of Obligor's Net Resources |
| 3 children | 25% of Obligor's Net Resources |
| 4 children | 30% of Obligor's Net Resources |
| 5 children | 35% of Obligor's Net Resources |
| 6+ children | Not less than the amount for 5 children |

**Credits**

Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995. Amended by Acts 2007, 80th Leg., ch. 620, § 2, eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 767, § 5, eff. June 19, 2009; Acts 2021, 87th Leg., ch. 552 (S.B. 286), § 4, eff. Sept. 1, 2021.

V. T. C. A., Family Code § 154.125, TX FAMILY § 154.125

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
      Subtitle B. Suits Affecting the Parent-Child Relationship
        Chapter 154. Child Support (Refs & Annos)
          Subchapter C. Child Support Guidelines (Refs & Annos)

V.T.C.A., Family Code § 154.130

§ 154.130. Findings in Child Support Order

Currentness

(a) Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in rendering an order of child support, the court shall make the findings required by Subsection (b) if:

(1) a party files a written request with the court before the final order is signed, but not later than 20 days after the date of rendition of the order;

(2) a party makes an oral request in open court during the hearing; or

(3) the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable.

(a-1) Repealed by Acts 2017, 85th Leg., ch. 421 (S.B. 1237), § 12(2).

(b) If findings are required by this section, the court shall state whether the application of the guidelines would be unjust or inappropriate and shall state the following in the child support order:

"(1) the net resources of the obligor per month are $_____;

"(2) the net resources of the obligee per month are $_____;

"(3) the percentage applied to the obligor's net resources for child support is _____%; and

"(4) if applicable, the specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable."

(c) Findings under Subsection (b)(2) are required only if evidence of the monthly net resources of the obligee has been offered.

**Credits**

Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995. Amended by Acts 2001, 77th Leg., ch. 1023, § 8, eff. Sept. 1, 2001; Acts 2007, 80th Leg., ch. 620, § 4, eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 767, § 6, 37, eff. June 19, 2009; Acts 2017, 85th Leg., ch. 421 (S.B. 1237), §§ 10, 12(2), eff. Sept. 1, 2017.

V. T. C. A., Family Code § 154.130, TX FAMILY § 154.130

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Clouthier on behalf of Susan Clouthier
Bar No. 24062673
susan@clouthierlaw.com
Envelope ID: 105504820
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Brief
Status as of 9/11/2025 1:54 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clint F.Sare | | cfs@sarelaw.com | 9/11/2025 1:48:23 PM | NOT SENT |
| Clouthier Law | | info@clouthierlaw.com | 9/11/2025 1:48:23 PM | NOT SENT |
| Susan J.Clouthier | | susan@clouthierlaw.com | 9/11/2025 1:48:23 PM | NOT SENT |